THOMPSON, Respondent, v. COMMONWEALTH FINANCE
CORPORATION et al, Appellant.

(191 N. W. 447.)

(File No. 5102.   Opinion filed December 30, 1922.)

Corporations—Stockholders—Fictitious Stock—Stock Issued to Direc-
tors for Future Service Held Void.

> Where a corporation issues stock to directors for services to
> be performed, held, under Const. art. 17, Sec. 8, providing "no
> corporation shall issue stocks or bonds except for money, labor
> done, or money and property actually received" that the stock
> is void, though in the hands of an assignee of a director.

Appeal from Circuit Court, Hughes County; Hon. John F.
Hughes, Judge.

Action by H. D. Thompson against the Commonwealth Fi-
nance Corporation and others. From an order overruling de-
fendants' demurrer to the complaint, they appeal. Reversed.

*Martens & Goldsmith,* of Pierre, (George Edwin Joseph, of
New York City, of counsel), for Appellants.

*Stephens & McNamee,* of Pierre, for Respondent.

Appellants cited:   Const. S. D., Sec. 8, Art. XVII; Rogers
v. Mining Co., 21 S. D. 414.

GATES, P. J.   Action by a stockholder of defendant cor-
poration against the corporation and two of its officers for dam-
ages caused by alleged acts of conspiracy to depreciate the value
of plaintiff's stock.   The defendant corporation demurred to the
complaint upon the ground that several causes of action were im-
properly united, and that the complaint did not state facts suffi-
cient to constitute a cause of action.   The appeal is by the cor-
poration from an order overruling the demurrer.

The complaint in substance alleges a recital of the organiza-
tion of the corporation, its purposes, and that its capital stock
consisted of 100,000 shares of preferred stock and 75,000 shares
of common stock, each of the par value of $100 per share, and
sets forth an agreement with a corporation known as Sargent &
Co. for the sale of its stock, a copy of which is hereinafter set
forth, and that said agreement was complied with.   The complaint
further alleges that 10,000 shares of the common stock were set
aside by Sargent & Co. as and for the board of directors selected

by them on or about October, 1916, and was issued to these directors for and in consideration of their agreeing to serve as directors for a period of three years, and that three of the directors, including one Ormsby McHarg, who was the assignor of the plaintiff, served as directors for this period of time. The complaint then sets out that the plaintiff was the owner of 1,914 shares of the common stock of the appellant, and that the individual defendants, together with the corporation, conspired together to depreciate the value of the stock of the plaintiff and caused its transfer agent to refuse to transfer the common stock owned and controlled by him, and thereby prevented the plaintiff from selling and disposing of said stock upon the public market, and in furtherance of their plan and conspiracy to depreciate the value of his stock did and performed the following acts: Caused written instructions to be given to its transfer agent to transfer no common stock owned by McHarg, or any of his assignees, and that in the month of September, 1920, they refused to cut up a certificate owned by plaintiff and transfer one share thereof to Tom C. McNamee; that in April, 1921, the transfer agent of the appellant refused to transfer a certificate standing in the name of the plaintiff for 100 shares, which stock was sold by plaintiff to one C. Mason; that immediately after the refusal to transfer said stock to said Mason the appellant caused an offer to be made to the plaintiff for his stock of $20 per share; that the appellant caused to be brought a certain action in the circuit court of Hughes county for the cancellation of the plaintiff's stock as well as that held by others, for the purpose of depreciating the plaintiff's stock. The complaint further alleges that, because of the refusal of the appellant to transfer plaintiff's stock and the other acts above set forth, the respondent was deprived of the market value and was compelled to accept the sum of $20 per share for his 1,914 shares of stock, when, if it had not been for such acts, he would have received at least $50 per share, and that, because of the destruction of the market price and the consequent coercion, said respondent was damaged in the sum of $57,420, or $30 per share for his 1,914 shares.

Following is a copy of the pleaded agreement for the sale of the stock of the corporation entered into by the corporation, under its then name "Metropolitan Finance Company," and Sargent & Co.:

. "Agreement made this 1st day of July, 1916, by and between Metropolitan Finance Company, a corporation organized under the laws of the state of South Dakota, hereinafter called party of the first part, and Sargent & Co., a corporation organized under the laws of the state of Minnesota, hereinafter called the party of the second part, witnesseth:

"Whereas, the party of the first part is desirous of disposing of its preferred stock at a price to net one hundred dollars ($100) per share to the party of the first part on or before ten (10) years fom the date hereon, and is willing to employ the party of the second part to carry out such sale upon the terms hereinafter mentioned; and

"Whereas, the party of the second part is willing to undertake such sale, and is equipped with the proper organization for such purpose:

"Now, therefore, in consideration of the premises, and the mutual covenants and promises herein contained, the parties agree hereto as follows:

"First.    The party of the second part promises and agrees to sell within ten (10) years after the date hereof one hundred thousand (100,000) shares of the preferred stock of the party of the first part of the par value of one hundred dollars ($100) each, at such price as will net the party of the first part one hundred dollars ($100) per share in cash; and, in consideration of such agreement, the party of the first part agrees that it will issue seventy-five thousand (75,000) shares of the common stock, full paid and nonassessable to the party of the second part.

. . "Second.    The party of the second part agrees that out of the common stock received by it for this contract it will return to the party of the first part fifty thousand (50,000) shares of common stock of the party of the first part, to be retained in its treasury for the purpose of being issued as a bonus with the preferred stock sold by the party of the second part, as hereinabove provided.    Provided, however, and the party of the first part agrees, that when it has issued one hundred thousand (100,000) shares of preferred stock sold by the party of the second part, it will return to the party of the second part any of the treasury common stock then remaining unused for the purpose hereinabove set forth.

"Third. The party of the second part agrees that within four (4) months after the date hereof it will commence the sale of said preferred stock, and will within fifteen (15) months after the date hereof sell at least five thousand (5,000) shares of said preferred stock, and thereafter at least an average of five thousand (5,000) shares per annum, and that, in the event that the party of the second part fails to sell at least five thousand (5,000) shares per annum of said preferred stock on the average, then this agreement may be terminated at the option of the party of the first part by giving the party of the second part sixty (60) days' notice in writing of the said default, addressed to the office of the party of the second part at Minneapolis, Minn., provided, however, and the party of the first part agrees, that the party of the second part shall be entitled to credit for an excess of five thousand (5,000) shares sold in any year upon the sales in any subsequent year designated by the party of the second part, it being understood and agreed, however, that this provision for average sales contained in this paragraph third shall not relieve the party of the second part in any way from its agreement in paragraph first to sell one hundred thousand (100,000) shares in ten (10) years.

"Fourth. The party of the second part agrees that it will accept as full compensation for its services and reimbursement for its expenses such of said common stock as is not used in connection with the sale of the preferred stock, together with the price at which the preferred stock is sold in excess of one hundred dollars ($100) per share.

"Fifth. The party of the first part agrees that it will accept one hundred dollars ($100) per share for preferred stock sold by the party of the second part, and will deliver upon the order of the party of the second part its preferred stock upon receipt of the sum of one hundred dollars ($100) per share, and in addition will deliver with preferred stock such amount of the common stock out of the treasury as the party of the second part may designate; provided, however, that such common stock shall in no event be delivered in a ratio greater than one-half (½) share for each share of preferred stock.

"Sixth. The party of the first part agrees that, as compensation for services and reimbursements of the expense of the

party of the second part, the party of the second part shall receive all common stock not used by it in connection with the sale of the preferred stock, and shall receive the excess of the price over par at which the party of the second part sells such preferred stock; and, because the party of the second part undertakes such sale at its own expense, the party of the first part agrees that, in the event that any preferred stock is sold on installments, the party of the second part shall be entitled to retain, or receive from the party of the first part, the first payments made by the purchaser of such stock up to the point where such payments made by any purchaser of such stock equal the excess of the sale price over par.

"Seventh.    The party of the second part agrees that it will not in any manner obligate the party of the first part for any expense or commissions, it being the intention of this agreement that the party of the first part shall realize par for all of its preferred stock, and that the party of the second part shall pay all the expenses of selling the same, and shall look for its reimbursement for such expense and for its compensation to the excess of sale price of the preferred stock above par and any common stock which may be retained by or returned to it in accordance therewith.

"Eighth.    Exhibit A, hereto attached and made a part hereof, is satisfactory to the parties hereto, and is agreed upon by them as the form of agreement under which the party of the second part will make sales of preferred stock.

"Witness whereof the parties hereto have caused their respective corporate names to be hereunto subscribed by their proper officers, and their corporate seals to be hereunto affixed on the day and year first above written."

It thus appears that respondent is the holder of 1,914 shares of the common stock originally issued to Sargent & Co. under the foregoing agreement. While the complaint does not specifically allege that these 1,914 shares were a part of the stock issued to Ormsby McHarg in consideration of services to be thereafter performed by him as director, the only reasonable and logical deduction to be drawn from the allegations of the complaint is that such was the case. The complaint alleges that McHarg was respondent's assignor, and does not allege that McHarg was the

owner of any other shares than those derived as aforesaid. The question now before us is as to the validity of said 1,914 shares of stock now held by respondent.

Section 8, art. 17, of our Constitution provides:

"No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received."

No money or property is alleged to have been received by the corporation. Nor is it alleged that the stock was issued for "labor done." The most that can be said is that the purported consideration was services to be thereafter rendered by Sargent & Co. It is clear that under our Constitution this is not an equivalent of "labor done." Fletcher, Corp. § 3505; Kirkup v. Anaconda Amustment Co., 59 Mont. 469, 197 Pac. 1005, 17 A. L. R. 441. It is therefore clear that no consideration moved from Sargent & Co. to the corporation for such stock, and that no consideration moved from McHarg to the corporation for the shares issued to him for services thereafter to be performed by him as director. Therefore, applying the rule laid down in Walton v. Standard Drilling Co., 43 S. D. 576, 181 N. W. 96 (and no facts are alleged, even if there could be, which take this case out from the operation of said rule), the shares of stock were void in the hands of respondent.

In respondent's brief we find the following:

"If it be a fact that the contract with Sargent & Co. under which the stock owned by plaintiff was originally issued was void, and the stock issued thereunder was therefore without consideration and void, then appellant's contention that the complaint does not state facts sufficient to constitute a cause of acion may be upheld."

We therefore find it unnecessary to consider whether the first ground of demurrer was or was not well founded. The complaint does not state a cause of action, and the order overruling the demurrer to the complaint is reversed.

Note—Reported in 191 N. W. 447. See American Key-Numbered Digest, Corporations, Key-No. 99(2), 14 C. J. Sec. 599.