IPSWICH PRINTING CO., Respondent, v. ENGLER, Appellant.

(259 N. W. 497.)

(File No. 7689. Opinion filed March 6, 1935.)

*J. M. Berry*, of Ipswich, for Appellant.

*H. L. Woodworth* and *James W. McCarter,* both of Ipswich, for Respondent.

ROBERTS, J. This is an appeal by the defendant from a judgment rendered in favor of the plaintiff corporation and from an order overruling a motion for new trial. In a former action defendant recovered judgment against the corporation and the same was affirmed on appeal [Engler v. Ipswich Printing Co., 63 S. D. 1, 256 N. W. 132], but the claims upon which there was recovery in that action are not here involved. Complaint in the instant action alleges in substance that from the time of the incorporation of the plaintiff company in October, 1927, until September 27, 1930, the defendant acted as secretary and had full charge of all the receipts and disbursements of the company; that defendant on December 23, 1927, issued and delivered to herself one share of the capital stock of plaintiff corporation of the par value of $100; that the defendant thereafter on February 12, 1928, issued and delivered to herself six shares of the capital stock of plaintiff corporation of the par value of $600; that defendant failed to pay to the plaintiff corporation any money or consideration or to transfer to it any property for the issuance of such capital stock; that defendant on September 26, 1930, received from the funds of the corporation the sum of $700, converted the same to her own use and benefit, and made a transfer of the seven shares of stock to the corporation without the knowledge or consent of its stockholders; and that defendant also received from the funds of the corporation and converted to her own use certain purported dividends on such stock.

Defendant affirmatively pleads that F. J. Tracy, being the owner and publisher of a newspaper known as the Ipswich Independent, immediately prior to the organization of plaintiff company purchased the Ipswich Tribune and the Roscoe Herald; that he transferred and conveyed to the corporation all of the properties of the Ipswich Independent and also the properties acquired by such purchase; that Tracy being entitled to shares of stock for the transfer and conveyance of such property caused to be issued to the defendant six shares of stock in payment for services performed by her for the Ipswich Independent and one share of stock in payment of wages due her for extra services performed for the

plaintiff company; and that subsequent to the transfers of the stock by defendant to the corporation, Mary F. Tracy, as the owner of all the outstanding stock of the corporation and in active management of the business, ratified such transfers; and that plaintiff is now bound by her act.

The undisputed evidence discloses that the stock certificates in question were signed by Tracy as president and by defendant as secretary; that F. J. Tracy prior to his death in June, 1928, transferred his shares of stock to his wife, Mary F. Tracy, who at the commencement of this action was the holder of all outstanding stock; that the board of directors did not fix and make entry in the minutes of the corporation of the value of the properties transferred by Tracy to the corporation in consideration of capital stock issued to him; and that the defendant received from funds of the corporation the par value of seven shares of stock upon their transfer to the corporation and payments of dividends upon such stock. Defendant made an offer of proof as to the reasonable value of the properties transferred by Tracy to the plaintiff corporation, and the trial court sustained an objection to such offer. At the close of the trial on motion of the plaintiff, the court instructed the jury to return a verdict for the plaintiff, and a verdict and judgment accordingly were rendered.

The court held in effect that the transactions whereby defendant acquired the seven shares of stock were void, and that when the corporation made payments to the defendant of the par value of the stock thus issued upon its surrender to the corporation no consideration was received for such payments.

In the absence of express prohibition, a corporation may receive or contract to receive property in payment for its stock, providing the acquisition is not ultra vires and the transaction is in good faith and free from fraud. Fletcher, Corporations, § 5185. Undeniably, the organization of the corporation and the transfer of the property were effected in good faith, and the property was of a kind which the corporation could lawfully acquire and hold in carrying out the purposes of its incorporation.

Section 8, art. 17, State Constitution, provides: "No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

The purpose of these provisions, among others, is to prevent the transfer of original shares of stock without sufficient consideration, either in the form of money, or property, or labor performed for the corporation. But these inhibitions cannot here be invoked. It does not appear that the value of the property was not equivalent to the par value of the stock issued, and the questions of the adequacy of consideration to meet the requirements of these provisions and of the effect of their violation are not before us.

Plaintiff relies principally upon the decision of this court rendered in Walton v. Standard Drilling Co., 43 S. D. 576, 181 N. W. 96, 97. That action was brought by the purchaser of a certificate of stock for value and without knowledge of the manner in which the certificate was originally issued to compel the defendant corporation to record a transfer of the stock. It was held that the stock having issued for an oil lease, worthless stock of another corporation, and services to be performed, was void and subject to cancellation and that the corporation was not estopped from setting up a defense of no consideration against a purchaser for value and without notice that the stock had been illegally issued.

The pertinent provisions of section 8775, Rev. Code 1919, read as follows: "All corporations for profit must issue certificates of stock when fully paid up, signed by the president and secretary, and may provide in their by-laws for issuing certificates prior to full payment, under such restrictions and for such purposes as their by-laws may provide. * * * When property is taken by the corporation in consideration for capital stock of the corporation, the judgment of the board of directors, made in good faith and entered in the minutes of the corporation, shall be conclusive as to the value of such property."

Construing these provisions, this court in Walton v. Standard Drilling Co., supra, said: "Under the provision of this statute, if property of any kind is accepted in lieu of money for shares of stock, the board of directors must fix the value of such property and enter the same on the minutes of the corporation. In this case it is not claimed that the board of directors ever passed judgment on the value of any part of the consideration that was accepted for the stock involved. Of course, no record was or could have been made on the minutes of the corporation; therefore the attempted sale of the stock was unauthorized and null and void.

Anderson v. Mining Syndicate et al., 26 S. D. 558, 128 N. W. 1016."

In Anderson v. Mining Syndicate, cited and relied upon in the opinion in the Walton Case, the defendant was a corporation organized by owners of mining claims. Shares of stock were issued in consideration of the conveyance by them of their claims to the corporation and the remainder of the shares were transferred without consideration. Under sections 423 and 425, Civil Code 1903 (sections 8775, 8777, Rev. Code 1919), requiring corporations to issue certificates of stock when fully paid, authorizing corporations to provide in their by-laws for issuing certificates prior to full payment and providing that a corporation may transfer its own stock pursuant to resolution of the stockholders or by their unanimous consent in writing for such price as may be agreed upon, the issuance of stock by the directors for an amount less than par value in violation of such provisions was declared to be unauthorized and null and void.

Following the holding in the Walton Case, this court in Northwest Mfg. & Milling Co. v. French, 44 S. D. 195, 183 N. W. 117, held that the trial court properly entered judgment canceling shares of stock where good faith of the directors in valuing property taken therefor and entry in the minutes of the corporation setting forth the judgment of the directors as to the value of the property was not shown.

In Thompson v. Commonwealth Finance Corp., 46 S. D. 141, 191 N. W. 447, 449, an action by a transferee of stock from a director of defendant corporation for damages caused by acts of alleged conspiracy to depreciate the value of plaintiff's stock, this court said: "It is therefore clear that no consideration moved from Sargent & Co. to the corporation for such stock, and that no consideration moved from McHarg to the corporation for the shares issued to him for services thereafter to be performed by him as director. Therefore, applying the rule laid down in Walton v. Standard Drilling Co, 43 S. D. 576, 181 N. W. 96 (and no facts are alleged, even if there could be, which take this case out from the operation of said rule), the shares of stock were void in the hands of respondent."

Different estimates may be formed as to the value of property received in payment for stock, and the Legislature has directed the

application of a rule for the determination of the value of property thus received by a corporation. The judgment of the board of directors, made in good faith and entered in the minutes of the corporation, is declared to be conclusive as to the value of such property. Whether the judgment of the board so determined is conclusive when it is subjected to judicial inquiry we are not required to determine. The question here presented is the effect of these provisions upon a transaction where property has been acquired and stock has been issued therefor without the determination of value by the directors of the corporation and entry thereof in its minutes.

The statute does not declare in express terms that such transaction is void. "It is rarely," says the court in Weeks v. Bridgman, 159 U. S. 541, 16 S. Ct. 72, 74, 40 L. Ed. 253, "that things are wholly void and without force and effect as to all persons and for all purposes, and incapable of being made otherwise. Things are voidable which are valid and effectual until they are avoided by some act; while things are often said to be void which are without validity until confirmed." The word "void" is frequently used in statutes and decisions of court without carefully distinguishing whether it was intended to mean utterly void or merely voidable. Notwithstanding stock issued in violation of statute may be declared void, the term has been construed to mean voidable. In Haynes v. Kenosha Elec. Ry. Co., 139 Wis. 227, 119 N. W. 568, 121 N. W. 124, the court construed a statute providing that no corporation shall issue any of its stock except in consideration of money or labor, or property estimated at its true money value actually received by it equal to the par value thereof, and that all stocks issued in violation of such provision shall be void, and it was held that the term was not used in the statute in the sense that stocks issued in violation of its provisions could not be subsequently validated by the payment of the requisite amount of money, labor or property before the commencement of the action which challenged them. In Toledo Ry. Co. v. Continental Trust Co. (C. C. A.) 95 F. 497, the court construed a statute that all stocks, bonds, or securities of a railroad company purchased of the corporation by a director at less than par shall be void, and held that such term should be construed to mean voidable. In Bankers' Trust Co. v. Rood, 211 Iowa, 289, 233 N. W. 794, 73 A. L. R.

1421, an act prohibiting the issuance of stock until the corporation had received the par value and providing that stock issued in violation of its provisions shall be void was construed to render stock issued without complying with the terms of the act merely voidable.

Where subscriptions to the capital stock of a corporation shall consist in whole or in part of property, a description of the property with a statement of the fair cash value thereof must appear in the articles of incorporation under the terms of a statute in the state of Utah. In construing this statute the court in Union Pacific Ry. Co. v. Blair, 48 Utah, 38, 156 P. 948, 949, says: "The articles of incorporation in question here did not contain the statement required by the foregoing section, nor any statement concerning the taking of property; nor were the articles of incorporation supplemented by the affidavits required by said section, nor by any affidavits or statement whatever. * * * We can see no good reason, nor do we discern any equity, in denying to those who, in good faith, have contributed property to a corporation in payment, or in part payment, of their subscriptions the right to show just what the property so contributed was actually worth in money at the time the corporation was organized. What possible injury can result by permitting such to be done? It is suggested, however, that the subscribers being allowed to place their own value upon the property which no longer may exist and at a time remote from the time when it was actually turned over to the corporation tends to foster injustice and to the inflation of values of the property actually turned over. The question is, however, also pertinent whether the arbitrary denial of credit for what was actually turned over in good faith does not also lead to injustice and wrong. · If the courts will but do their whole duty no great wrong or injustice can result from allowing credit to the stockholders for the actual cash value of the property turned over by them to the corporation even under our statute."

The court in Overlock v. Jerome-Portland Mining Co., 29 Ariz. 560, 243 P. 400, while regarding itself as bound by prior decisions to the effect that issuance of stock by a corporation in violation of statutory provisions with reference to receipt of consideration is void, expressed dissatisfaction with the holding.

See, also, Whitewater Tile & Pressed Brick Mfg. Co. v. Baker, 142 Wis. 420, 125 N. W. 984; Sherman v. Smith, 185 Iowa 654, 169 N. W. 216; Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1329; Ramsay v. Crevlin (C. C. A.) 254 F. 813.

If this court dealt in its former decisions with fictitious and speculative issues of stock which were void within the inhibition of the Constitution, the distinction is not made in the holdings between such situation and that in the instant case, where the transaction transcends statutory provisions but not the Constitution. In so far as such former decisions rule that when property is received in payment of stock by a corporation and the directors fail to fix and make entry of the value of the property in the minutes of the corporation the stock is void, we disapprove and overrule.

If F. J. Tracy was entitled to the seven shares of stock in question for property transferred to the corporation, he could make such disposition of the shares as he desired. The circumstance that they were issued directly to defendant is not material. It was not necessary that the stock be first issued to Mr. Tracy and a transfer made by him to the defendant. It cannot be said that the stock for such reason was issued without consideration to the corporation.

The judgment and order appealed from are reversed.

WARREN, P. J., and POLLEY and RUDOLPH, JJ., concur.

CAMPBELL, J., not sitting.