# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-3773

_____

Bret Healy

*Plaintiff - Appellant*

v.

Albert Steven Fox; Bryce Healy; Mary Ann Osborne

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Central

_____

Submitted: June 16, 2022
Filed: August 22, 2022

_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Bret Healy appeals the district court's[1] dismissal of his Racketeer Influenced and Corrupt Organizations Act ("RICO") action, *see* 18 U.S.C. § 1962(c)-(d), in

---

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

which the district court concluded that *res judicata* and the four-year RICO statute of limitations bar the action. We affirm.

## I.

This action arises from a dispute over the ownership and control of a family ranch. In 1961, Bret Healy's father and grandfather formed the Healy Ranch Partnership ("HRP") for the purpose of ranching and farming in which each had equal ownership interests. The partnership owned land that was used as the family ranch. After Bret's father and grandfather died, Bret's mother, Mary Ann Osborne, and his grandmother each received a 50 percent interest in the partnership.

In 1986, Bret's grandmother transferred her partnership interest to Bret in exchange for him assuming the partnership's debt and making certain payments to her. In 1994, Osborne formed a South Dakota corporation, Healy Ranch, Inc. ("HRI"). She filed articles of incorporation authorizing HRI to issue 1,000,000 shares of common stock with a par value of one dollar per share. The articles of incorporation stated that the "corporation will not commence business until consideration of the value of at least Five Thousand Dollars has been received for the issuance of shares." On the filing date, Osborne and her lawyer, Albert Steven Fox, caused HRI to issue to Osborne 299,348 shares of common stock in HRI. But at the time, HRI received no consideration for the issuance of those shares.

In 1995, Osborne conveyed all of the partnership's real-property interest in the ranch to HRI, including both her 50 percent share as well as Bret's 50 percent share. In 2000, Osborne sold one third of her shares of HRI to Bret and one third to each of his two brothers, Bryce Healy and Barry Healy. From 1999 to 2017, Bryce served as secretary and treasurer of HRI with responsibility for all of the financial recordkeeping. Bret received yearly Schedule K-1 tax forms, which showed that he owned one third of the stock of HRI. In 1999, Bret became the director and president of HRI.

-2-

In 2017, Bret sued Osborne, Bryce, Barry, Fox, the partnership, and HRI in South Dakota state court asserting causes of action for conversion, fraud, breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duties, negligence, unjust enrichment, and conspiracy to commit fraud. Among other things, Bret alleged that the 1995 transfer of the ranch from the partnership to HRI was made without Bret's knowledge or consent even though he was a partner with 50 percent ownership. Bret also alleged that Osborne "falsely and fraudulently failed to disclose to [Bret] that she had conveyed all the partnership assets to a corporate entity" and that she and the other individual defendants "concealed the true facts for the purpose of defrauding [Bret]." He further alleged that the defendants conspired to fraudulently transfer the property and continued to act "in concert to conceal the transfer of partnership property from [Bret]."

Discovery lasted less than three months, and the defendants moved for summary judgment. *See Healy v. Osborne (Healy I)*, 934 N.W.2d 557, 562 (S.D. 2019). On August 10, 2017, the court ordered briefing on the summary-judgment motions, and it held a hearing on September 22, 2017. On October 13, 2017, the court granted summary judgment for the defendants on the ground that Bret's claims were barred by the statutes of limitations because Bret had at least constructive knowledge more than six years prior to filing suit of the facts that formed the basis for his claims. *See id.* at 562. The South Dakota Supreme Court affirmed. *Id*. at 565-66.

While his appeal in *Healy I* was pending, "Bret prepared and recorded a notice of claim of interest stating that HRP held an interest in the Ranch." *Healy Ranch, Inc. v. Healy (Healy II)*, #29409, 29420, --- N.W.2d ---, 2022 WL 3097830, at *2 (S.D. Aug. 3, 2022). After *Healy I* was decided, HRI sought to establish "marketable title" to the ranch and void Bret's notice of claim. *Id.* Bret counterclaimed, asking "to quiet title to the Ranch in HRP, asserting it owned the Ranch." *Id.* The South Dakota Supreme Court recently concluded that Bret's quiet-title counterclaim was claim precluded because it "is an overt effort to litigate the same *cause of action* that he litigated in [*Healy I*]." *Id.* at *9.

-3-

In March 2021, Bret brought a RICO action in federal court against Osborne, Bryce, and Fox, alleging mail fraud, bank fraud, *see* § 1962(c), and conspiracy to engage in a pattern of racketeering, *see* § 1962(d). His claims were based on the theory that the defendants knew that HRI's stock was void because it was issued without consideration but nonetheless fraudulently represented to Bret that he owned shares in HRI. According to Bret, when the stock was issued, Osborne did not provide consideration for the shares. Later, she transferred the partnership's interest in the ranch to HRI and then sold some of her shares—representing them as valid— to Bret. Bret alleged that the transfer of the ranch did not constitute valid consideration for the issuance of stock as required by HRI's articles of incorporation because it was a transfer of the partnership's interest, not consideration paid by Osborne.

Bret alleged that he did not realize that no consideration had been provided for the issuance of the shares until August 8, 2017 when he received financial documents in response to a subpoena served in connection with his state action. Bret also alleged that Osborne and Bryce delivered fraudulent Schedule K-1 forms to him showing that he owned one third of HRI and that Osborne, Bryce, and Fox formed a conspiracy to engage in a pattern of racketeering from 1999 through 2017. The defendants filed motions to dismiss for failure to state a claim. The district court granted the motions on the grounds that the RICO action was barred by *res judicata* and the four-year RICO statute of limitations. *See Hope v. Klabal*, 457 F.3d 784, 790 (8th Cir. 2006) (RICO statute of limitations). Bret appeals.

## II.

We affirm the district court's dismissal on the ground that Bret's federal suit is barred by *res judicata*. "We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim based on *res judicata*." *Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011). "To survive a motion to dismiss for failure to state a claim, a complaint must allege sufficient facts to state a facially plausible claim to relief." *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020). "To

determine whether a complaint states a facially plausible claim, we accept the factual allegations in the complaint as true and draw all reasonable inferences in the nonmovant's favor." *Id.*

"[A] federal court must give to a state court-judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 81 (1984). The judgment here was rendered in South Dakota. *See Healy*, 934 N.W.2d 557. "[A] [(1)] final judgment or decree of a court of competent jurisdiction upon the merits is a bar to any future action [(2)] between the same parties or their privies [(3)] upon the same cause of action so long as it remains unreversed . . . ." *Golden v. Oahe Enters., Inc.*, 240 N.W.2d 102, 109 (S.D. 1976). Additionally, to apply *res judicata* in South Dakota, (4) "there must have been a full and fair opportunity to litigate the issues in the prior adjudication." *Dakota, Minn. & E. R.R. v. Acuity*, 720 N.W.2d 655, 661 (S.D. 2006). The parties agree that *Healy I* is a final judgment on the merits[2] and that the parties in the two actions are the same.

## A.

First, we address whether the cause of action is the same in both the state and federal action. "Whether causes of action are identical depends on whether the wrong sought to be redressed is the same in both actions." *Hicks v. O'Meara*, 31 F.3d 744, 746 (8th Cir. 1994). "To make this determination, South Dakota law requires we look to the underlying facts which give rise to each cause of action." *Id.*; *see also Ruple v. City of Vermillion*, 714 F.2d 860, 861-62 (8th Cir. 1983) (noting that "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action," South Dakota courts would agree "that the two cases are really the same 'claim' or 'cause of action' for purposes of res

---

[2]Bret initially disputed that the South Dakota Supreme Court would hold that a dismissal based on the statute of limitations is a final judgment on the merits, but in *Healy II* it decided that it was. *See Healy II*, 2022 WL 3097830, at *10. Now, Bret concedes that *Healy I* is a final judgment on the merits.

judicata"). "If the claims arose out of a single act or dispute and one claim has been brought to a final judgment, then all other claims arising out of that same act or dispute are barred." *Farmer v. S.D. Dep't of Revenue & Regul.*, 781 N.W.2d 655, 660 (S.D. 2010). "This is true regardless of whether there were different legal theories asserted or different forms of relief requested in a subsequent action." *Id.*

Like the South Dakota Supreme Court did in *Healy II* as to Bret's quiet-title action, we hold that Bret's RICO action is the same cause of action as *Healy I*. *See Healy II*, 2022 WL 3097830, at *9. Here, as in *Healy II*, "Bret is again addressing the same wrong he identified in [*Healy I*]—the alleged wrongful conduct by members of his family to vest HRI with ownership of the Ranch." *Id.*

This RICO action "arises out of the same nucleus of operative fact" as *Healy I. See Ruple*, 714 F.2d at 861. Both *Healy I* and this RICO action largely involve and originate from Osborne's formation of HRI in 1994 and the transfer of the ranch to HRI in 1995. In *Healy I*, Bret alleged that the concealment of the transfer that included his partnership interest was fraudulent. In the federal action, Bret alleged that the defendants fraudulently represented to him that he owned shares in HRI (and thus had an interest in the ranch), which is premised on the claim that the stock is void because the transfer of the partnership's interest in the ranch to HRI was not valid consideration for the issuance of HRI stock. *See Ipswich Printing Co. v. Engler*, 259 N.W. 497, 498 (S.D. 1935) ("In the absence of express prohibition, a corporation may receive or contract to receive property in payment for its stock, providing the acquisition is not ultra vires and the transaction is in good faith and free from fraud."). From these facts, we conclude that the wrong Bret primarily seeks to redress in both actions is the defendants' depriving him of his ownership interest in the ranch.

True, the theories of liability that Bret asserts in this action are different from those that he asserted in *Healy I*. And the two actions do not require absolutely identical proof. But South Dakota law requires only that the actions seek to redress the same wrong, not that they involve the same legal theories. *Healy II*, 2022 WL

-6-

3097830, at *9; *Farmer*, 781 N.W.2d at 660. South Dakota courts also do not require entirely the same proof in both actions. *See Ruple*, 714 F.2d at 861-62 (noting that "all of the theories that a dismissed employee can bring . . . to challenge the dismissal should be raised and decided in the same lawsuit," which would include theories that do not require identical proof). Though Bret focuses his federal complaint on the stock issuance, the underlying facts in both actions are sufficiently similar to render the causes of action in the two actions identical for purposes of *res judicata* under South Dakota law.

B.

Second, Bret had a full and fair opportunity to litigate the issue of whether the transfer of the partnership's interest in the ranch to HRI constitutes consideration for the stock issuance. Claim preclusion "bars prosecution of claims that could have been raised in the earlier proceeding, even though not actually raised." *Am. Family Ins. Grp. v. Robnik*, 787 N.W.2d 768, 775 (S.D. 2010). Whether the party "had a full and fair opportunity to litigate is not determined by whether it is still possible to find additional evidence concerning that claim." *Est. of Johnson v. Weber*, 898 N.W.2d 718, 733 (S.D. 2017) (internal quotation marks omitted). "[N]ewly-discovered evidence does not provide an exception to res judicata." *Id.*

Bret alleged that he was not aware that HRI's stock had not been validly issued until August 8, 2017, when he obtained from HRI's accounting firm more than two-hundred pages of tax working papers for HRI from 1995 through 2016 in response to a third-party subpoena he had served in June 2017. Bret argues that the newly discovered papers give rise to a separate claim and are therefore not "new evidence relating to defendants' conduct in connection with transfer to the corporation of record title to the ranch." Bret also argues that he did not have enough time before the summary-judgment briefing was due to review the papers and raise the issue of the void stock issuance, especially because he had to review other documents from the 2,000 discovery requests he sent.

First, we disagree with Bret's claim that the tax working papers are not new evidence relating to the transfer of the title to the ranch. The void-stock theory depends on the transfer of the partnership's interest in the ranch to HRI not being valid consideration for the issuance of the stock. Second, we disagree that Bret lacked a full and fair opportunity to litigate the void-stock theory in state court simply because he only had a few weeks to review the tax working papers. The fact that Bret might have discovered the evidence about the allegedly void stock if he had more time does not mean he did not have a full and fair opportunity to litigate the issue. If the discovery of new evidence after the judgment that the party never had a chance to review does not deprive the party of its full and fair opportunity to litigate, then evidence the party had at least eight weeks before judgment was entered and merely failed to review also does not do so. *See Est. of Johnson*, 898 N.W.2d at 733. Further, as a practical matter, Bret could have moved to amend his complaint to add an additional claim about the void stock at any point before the state court entered summary judgment on October 13, 2017. *See Healy*, 934 N.W.2d at 562 (listing the date summary judgment was entered); S.D. Codified Laws § 15-6-15(a) (providing for amendments to pleadings); *Isakson v. Parris*, 526 N.W.2d 733, 735-36 (S.D. 1995) (stating that a trial court has discretion to grant a motion to amend before, during, and even after trial so long as it does not prejudice the opposing party).

"Bret was aware of each and every fact necessary to have brought [this] action in 2017. Instead, he elected to pursue different claims and remedies whose lack of success should have signaled the end of the dispute." *See Healy II*, 2022 WL 3097830, at *12.* Therefore, we hold that Bret had a full and fair opportunity to litigate the validity of the stock issuance in state court.

\*   \*   \*

-8-

In sum, we conclude that all four factors required to apply *res judicata* are present here.  Therefore, the state-court judgment against Bret has preclusive effect.[3]

## III.

For the foregoing reasons, we affirm the district court's dismissal of Bret's complaint.

_____

[3]Because we affirm on the ground of *res judicata*, we need not reach the statute of limitations question.