#30666-aff in pt, vacate in pt, & rem-JMK
**2026 S.D. 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE DISSOLUTION OF
HEALY RANCH, INC.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. SMITH
Judge

* * * *

BRET HEALY
Chamberlain, South Dakota                     Pro Se appellant.


LEE SCHOENBECK
JOE ERICKSON of
Schoenbeck & Erickson, P.C.
Watertown, South Dakota                       Attorneys for appellee Healy
                                              Ranch, Inc.


* * * *

CONSIDERED ON BRIEFS
FEBRUARY 18, 2025
OPINION FILED **03/04/26**

#30666

KERN, Retired Justice

[¶1.] Healy Ranch, Inc. (HRI) filed a petition for court supervised dissolution. Healy Ranch Partnership (HRP), through its managing and majority partner, Bret Healy, moved to dismiss the petition, asserting that HRP owns a majority of the capital stock in HRI, and that as such, a majority of HRI's shareholders did not approve the proposed dissolution. Soon after the motion to dismiss was filed, the circuit court issued an order to show cause to Bret and his attorney, Tucker Volesky, "as to why they have not violated SDCL 15-6-11(b) and why they should not face sanctions for said alleged violations." The order to show cause alleged that the motion to dismiss was unsupported and contradicted by well-established facts, namely, that: (1) Bret and/or HRP owned no more than a one-third interest in HRI; (2) Bret swore falsely in the statement of certification of HRP by stating that less than 50% of the outstanding shares of HRI supported dissolution and that Volesky filed the certification, knowing it contained a false statement; and (3) in support of the knowingly false claims, irrelevant and unnecessary filings were made with the "sole intent to relitigate past lawsuits and to harass and cause unnecessary delay or needless[ly] increase the cost of litigation."

[¶2.] The circuit court concluded Bret violated SDCL 15-6-11(b)(1) and Volesky violated SDCL 15-6-11(b)(1)-(3). The court imposed a monetary sanction against Bret in the amount of $240,000 and against Volesky in the amount of $10,000. In addition to the monetary sanction, the circuit court indicated it was "duty bound" to report Volesky's conduct to the Disciplinary Board of the State Bar

-1-

of South Dakota, and it ordered that Volesky comply with any directives the Disciplinary Board should issue. Bret, now appearing pro se, appeals the circuit court's sanction.[1] We affirm the circuit court's determination that Bret engaged in sanctionable conduct under SDCL 15-6-11(c), but we vacate the imposition of monetary sanctions and remand for a hearing and reconsideration of the various types of sanctions, and if a monetary sanction is imposed, a determination that includes Bret's ability to pay the monetary sanction.

## Factual and Procedural Background

[¶3.] This latest appeal involving HRP and Bret began as a petition for court supervised dissolution filed by HRI. However, the issues on appeal are wholly unrelated to that petition, and instead relate to the circuit court's sanctioning of Bret based on his unrelenting quest to establish his ownership of HRI and/or the Ranch, despite the circuit court's conclusion that "the very issue [Bret] is litigating has been determined contrary to his position, and frequently." Accordingly, the history of the parties and the other actions in which Bret has actually, or could have, litigated these same issues is important to the Court's review of the circuit court's sanctions.

### *History of the Ranch, HRP, and HRI*

[¶4.] The Ranch is located in Brule County, South Dakota, and has been owned or occupied by the Healy family since 1887. The Ranch was farmed by Emmett and DeLonde Healy (Bret's grandparents) until Emmett's death in 1969.

---

1. Volesky did not appeal the monetary sanction imposed against him. The Court suspended Volesky's license to practice law for a period of 90 days. *Matter of Discipline of Volesky*, 2025 S.D. 62, 28 N.W.3d 146.

Prior to Emmett's death, he created a partnership, giving ownership of the Ranch to himself and Bret's father, Robert. After Emmett's death, DeLonde inherited Emmett's half of the partnership and Robert and DeLonde later created another partnership (the 1972 partnership) with Robert and his wife, Mary Ann Osborne, owning half and DeLonde owning the remaining half. Although the 1972 partnership agreement was never signed, a deed transferring Healy Ranch into the partnership was recorded. After Robert died in 1985, Mary Ann (mother of Bret, Barry, and Bryce) became the sole owner of Robert's share.[2]

[¶5.] The following year, DeLonde, Bret, and Mary Ann created a third Healy Ranch partnership (the 1986 partnership), granting Bret 25% and Mary 75% ownership interest in the Ranch. DeLonde relinquished all control over the Ranch and signed a general warranty deed in 1989 purporting to effectuate the agreement, but neither the partnership agreement nor that deed were recorded.

[¶6.] In 1995, Mary Ann and DeLonde executed a warranty deed transferring Healy Ranch from the terminated 1972 partnership to a corporation exclusively owned by Mary Ann—HRI. HRI was incorporated in 1994 under South Dakota law as a family farm corporation, consisting of approximately 1,700 acres of

---

2. At the time Robert died, he and Mary owned 75% of the partnership assets. The 1972 partnership agreement provided that in exchange for Robert's services as the managing partner, DeLonde would vest 10% of her original capital contribution in Robert and Mary Ann for each of the first five years of the partnership, so that at the end of five years, Robert and Mary Ann would own 75% of the assets and DeLonde would own 25%.

real property.[3] At the time of incorporation, Mary Ann was the sole shareholder of HRI. In 2000, Mary Ann sold her shares in HRI to her sons, Bret, Barry, and Bryce, with each of them purchasing a one-third interest in HRI.

[¶7.] The ownership of HRI is challenged by Bret in his motion to dismiss the petition for court supervised dissolution, where he claims, inter alia, that HRP owns, at the very least, a majority of the stock in HRI, and that as a result, a majority of the shares of HRI did not approve the petition for dissolution. The basis for the circuit court's sanctioning of Bret is that the ownership issue had been decided against Bret on many occasions in prior actions in which the ownership and control of the Ranch and HRI were at issue. We, therefore, summarize the prior actions that the circuit court found to have involved ownership in some fashion.

*The prior litigation*

[¶8.] Bret's barrage of claims involving, directly or indirectly, ownership of HRI and the Ranch began in 2017, when he brought suit against his mother, Mary Ann, his two brothers, Bryce and Barry, the family's attorney, Steven Fox, HRP, and HRI, claiming to own 50% of the Ranch "pursuant to his interests in [HRP and HRI]." *Healy v. Osborne*, 2019 S.D. 56, ¶ 2, 934 N.W.2d 557, 559–60 (*Healy I*). In that case, Bret asserted a number of tort and contract claims, including conversion, fraud, conspiracy to commit fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, and negligence.

---

3. The history of HRP and HRI is set forth more fully in *Healy v. Osborne*, 2019 S.D. 56, 934 N.W.2d 557 (*Healy I*), *Healy Ranch P'ship v. Mines*, 2022 S.D. 44, 978 N.W.2d 768 (*Mines*), and *Healy Ranch, Inc. v. Healy*, 2022 S.D. 43, 978 N.W.2d 786 (*Healy II*), as well as in subsequent cases in both this Court and the federal district court.

*Id.* ¶ 11, 934 N.W.2d at 561. He also alleged unjust enrichment and requested that the court pierce the corporate veil of HRI. *Id.*

[¶9.] The circuit court in that case dismissed the action, concluding Bret's claims were untimely. On appeal, Bret argued that the statute of limitations was tolled due to defendants' alleged fraud and that he was in a fiduciary relationship with Mary Ann. *Id.* ¶ 25, 934 N.W.2d at 564 & n.6. Bret claimed that "Mary [Ann] retained 20.89% of the corporation because she only conveyed 162,000 shares to her sons pursuant to the 2000 contract for deed rather than the entire 299,348 shares she began with." *Id.* He alleged "he remain[ed] in a fiduciary relationship with her because she maintain[ed] her status as one of the majority shareholders in a closely-held corporation." *Id.* However, during the summary judgment proceedings in the circuit court, Bret admitted that he and his brothers each owned a one-third interest in HRI.

[¶10.] Additionally, Bret maintained in *Healy I* that "his interest in the [1986] partnership remained intact," but the Court held "his actions did not reflect this belief." *Id.* ¶ 29, 934 N.W.2d at 565. In support, the Court stated:

> Until shortly before he initiated this action, Bret ignored the partnership following the creation of Healy Ranch, Inc. He did not record the 1986 partnership agreement or the 1989 deed. The partnership did not file a partnership return or pay property taxes after 1995, and Bret represented that his shares of Healy Ranch, Inc. stock were his only asset on an individual financial statement in November 2001. Bret's comment to Barry in a June 2016 e-mail is also telling. In that correspondence, Bret acknowledged: "I *owned* 25% of the place–mom insisted on 1/3 to everyone–so yes I did put all my chips back in for 8% . . . ."

*Id.* The Court noted that "Bret also alleged that Mary [Ann], with the assistance of [Attorney] Fox, fraudulently transferred two lots—RH-1 and RH-2—out of the

partnership property in 1988 and 1992. He alleged that the 1986 partnership owned both RH-1 and RH-2, and that Mary [Ann] signed two warranty deeds in her individual capacity and as executrix of the Robert E. Healy Estate to unlawfully transfer the lots to other individuals."[4] *Id.* ¶ 6 n.1, 934 N.W.2d at 560 n.1.

[¶11.] On appeal, this Court noted that HRP was formed in 1986 and with that formation, Bret received an interest in the Ranch. The Ranch was later transferred to HRI, which at that time, was "exclusively owned by Mary [Ann]." *Id.* ¶ 6. However, "[i]n 2000, Bret, Bryce, and Barry each purchased a one-third interest in [HRI] from Mary [Ann] pursuant to contract for deed." *Id.* ¶ 7. We further noted that Bret represented on several occasions that HRI was the sole owner of the Ranch. However, we did *not* determine ownership of the Ranch in *Healy I*, stating, "We decline to address Bret's claim of ownership because the threshold issue in this case centers on the timeliness of Bret's claims for conversion, breach of contract, fraud, conspiracy to commit fraud, unjust enrichment, breach of fiduciary duties, and negligence." *Id.* ¶ 21, 934 N.W.2d at 563.

[¶12.] The Court ultimately concluded that Bret's claims were barred by the applicable statutes of limitations. The Court also affirmed the circuit court's finding that Bret's lawsuit was frivolous and malicious, noting that "Bret filed the lawsuit for the purpose of preventing the sale of the property, not because he believed his partnership interest remained enforceable." *Id.* ¶ 37, 934 N.W.2d at 567. Accordingly, the Court affirmed the circuit court's award of attorney fees, sales

---

4. This allegation is the subject of a later lawsuit brought by Bret, which is discussed below.

tax, and costs in the total amount of $83,295.42 ($32,606.54 to Mary Ann; $38,283.88 to Bryce, Barry, and HRI; and $12,405 to Fox), and additionally, awarded appellate attorney fees and costs—$7,500 to Bryce, Barry, and HRI, $7,500 to Mary Ann, and $3,450 to Fox. *Id.* ¶¶ 16, 38, 934 N.W.2d at 562, 567.

[¶13.]     In *Healy Ranch Partnership v. Mines*, 2022 S.D. 44, 978 N.W.2d 768 (*Mines*), HRP, through Bret, filed a quiet title action to a parcel of the Ranch commonly known as Lot RH-2 or RH-2. The action named the individuals in possession of RH-2 (Larry and Sheila Mines, together the Mineses), as well as the previous possessors and another member of HRP, as defendants. The Mineses filed a counterclaim, asserting title through adverse possession. *Id.* ¶ 1.

[¶14.]     The record in that case revealed that in 1990, HRP entered into negotiations to sell RH-2 to Raymond Sharping, and Mary Ann executed a warranty deed on August 1, 1992, conveying RH-2 to Raymond and Evelyn Sharping.[5] *Id.* at ¶ 10, 978 N.W.2d at 773. Upon Evelyn's and then Raymond's death, RH-2 passed to his son, Randolph Sharping, via Raymond's will. Randolph Sharping executed and recorded a warranty deed for RH-2 in favor of the Mineses on June 21, 2012, and Bryce, acting on behalf of HRI, executed and recorded a quitclaim deed to RH-2 in favor of Randolph on June 26, 2012.

[¶15.]     In 1995, Mary Ann and DeLonde executed a warranty deed purporting to transfer the Ranch (excepting RH-2) from HRP to HRI. Bret alleged, however, that HRP remained the owner of all 1,700 acres of the Ranch, claiming Mary Ann

---

5.     The full history of the ownership of RH-2 is set forth in *Mines*, 2022 S.D. 44, ¶¶ 1–14, 978 N.W.2d at 772–74.

was not authorized to transfer HRP's real estate to HRI without his consent. According to Bret, Mary Ann converted her 75% interest in HRP into HRI, which became a partner with Bret in HRP. Bret claimed he and his brothers purchased only their mother's 75% interest and left intact Bret's 25% interest under the 1986 partnership agreement. However, after HRI's creation, it appears the Ranch's lenders dealt only with HRI and, most often, with Bret, who is listed on loan documents as HRI's president.

[¶16.] Relevant to the competing claims of the ownership of RH-2, we noted in *Mines* that in the years following the Sharpings' possession of RH-2, Bret executed several documents that excluded RH-2 from the Ranch's real estate holdings. Further, Bret stated he was aware that the Sharpings began farming RH-2 in 1990, although he has made varying claims regarding the circumstances under which they did so. Nevertheless, Bret claimed in *Mines* that RH-2 was not transferred at all, maintaining that "Mary Ann's lack of authority to transfer RH-2 means that any act to convey the property was 'null and void' and, as a consequence, HRP still retains ownership." *Mines*, 2022 S.D. 44, ¶¶ 20–21, 978 N.W.2d at 775. This was a different claim than what Bret asserted with respect to this property in *Healy I*.

[¶17.] In our opinion addressing the appeal from the circuit court's rulings against Bret in *Mines*, we noted Bret's inconsistent theories:

> Before addressing the merits of the Mineses' adverse possession claim, however, we must first determine whether Bret, in the name of HRP, may claim the Sharpings' use of RH-2 was permissive, given his position regarding RH-2 in *Healy v. Osborne*. As indicated above, Bret's arguments regarding RH-2

> in *Healy v. Osborne* and his assertions regarding the same tract of land made in this action are perceptibly different.
>
> In *Healy v. Osborne*, Bret alleged that Mary Ann and the family's attorney had actually *transferred* RH-2, though fraudulently and without authority. 2019 S.D. 56, ¶ 6 n.1, 934 N.W.2d at 560 n.1. In fact, Bret claimed during his deposition in the *Healy v. Osborne* litigation that the transfer of RH-2 "has caused the loss of land" because "it was transferred to Raymond Sharping."
>
> Bret's theory in this quiet title action brought in the name of HRP is different, however. He now claims that RH-2 was *not* transferred. Instead, Bret asserts that Mary Ann's lack of authority to transfer RH-2 rendered any act to convey the property "null and void," leaving HRP as the owner. With this predicate, Bret develops his factual theory that Raymond Sharping and his successors have, from 1990 to the present, all occupied RH-2 with HRP's permission.

*Mines*, 2022 S.D. 44, ¶¶ 50–52, 978 N.W.2d at 782. We stated that Bret "taking inconsistent positions in this way implicates the doctrine of judicial estoppel." *Id.* ¶ 53.

[¶18.] After analyzing the varying claims under our judicial estoppel principles, we concluded: "Under the circumstance presented here, the application of judicial estoppel is appropriate. Bret may not, in the name of HRP, re-fashion his claim regarding RH-2 into a quiet title action that contemplates the land was never transferred and, instead, has been permissively used for the past thirty years by others who have farmed it and paid the taxes." *Id.* ¶ 60, 978 N.W.2d at 784. Ultimately, we concluded that the circuit court properly held that the Mineses "established title to RH-2 by adversely possessing the property under the terms of SDCL 15-3-15." *Id.* ¶ 69, 978 N.W.2d at 786. Our decision in *Healy I* did not, therefore, address the substance of Bret's ownership claim.

[¶19.] While *Healy I* was pending on appeal, Bret filed a notice of claim, asserting HRP held an interest in the Ranch. *Healy Ranch, Inc. v. Healy*, 2022 S.D. 43, ¶ 1, 978 N.W.2d 786, 790 (*Healy II*). Bret's notice of claim specifically listed the parcels that constitute the Ranch—the same property that was at the heart of Bret's principal claims in *Healy I. Id.* ¶ 10, 978 N.W.2d at 792. HRI then brought a quiet title action against Bret and HRP, seeking to establish "marketable title" under the South Dakota Marketable Title Act (SDMTA) and to void Bret's notice of claim. HRI alleged that Bret had not filed his notice of claim within the governing twenty-two-year statutory period, and it requested costs and attorney fees, claiming Bret filed the notice of claim for the sole purpose of slandering HRI's title. *Id.* ¶ 11.

[¶20.] The circuit court granted HRI's motion for summary judgment, "concluding that Bret's notice of claim was not timely under the SDMTA." The court, however, denied HRI's request for costs and attorney fees, concluding "there has not been a showing to the [c]ourt's satisfaction that this was done for the purpose of slandering title[.]" *Id.* ¶ 15, 978 N.W.2d at 792–93 (alterations in original). The court rejected HRI's claim that the previous award of attorney fees in *Healy I* conclusively established that Bret's claim that HRP owned the Ranch was frivolous and malicious. *Id.*

[¶21.] On appeal, this Court disagreed with the circuit court's conclusion regarding timeliness. However, we nevertheless concluded that res judicata barred Bret's "counterclaim seeking to quiet title in HRP." *Id.* ¶ 39, 978 N.W.2d at 798. We explained:

> Bret's quiet title counterclaim in this case is an overt effort to litigate the same *cause of action* that he litigated in [*Healy I*].

> Although the specific legal theories advanced in the two cases are different, of course, Bret is again addressing the same wrong he identified in [*Healy I*]—the alleged wrongful conduct by members of his family to vest HRI with ownership of the Ranch. The underlying facts are the same, as is Bret's principal argument that *HRI does not truly own the Ranch.*

*Id.* ¶ 49, 978 N.W.2d at 800 (citation modified). We, therefore, concluded:

> Bret was aware of each and every fact necessary to have brought his quiet title action in 2017. Instead, he elected to pursue different claims and remedies whose lack of success should have signaled the end of the dispute. He cannot now extend the life of those claims against members of his family by repurposing them in an effort to litigate the same wrong premised upon the same facts. Though his notice of claim may have been timely filed, the cause of action is precluded, and the notice should be voided on this basis.

*Id.* ¶ 59, 978 N.W.2d at 802–03. Accordingly, the Court again did not reach the substance of Bret's ownership claim in *Healy II*.

[¶22.] Even before *Healy II* was decided, Bret also filed a complaint in federal district court against Mary Ann, Bryce, and Fox, under the Racketeer Influenced and Corrupt Organizations Act (RICO), alleging mail fraud, bank fraud, and conspiracy to engage in a pattern of racketeering. *Healy v. Fox*, 572 F. Supp. 3d 730, 734–35 (D.S.D. 2021) (*Fox*), *aff'd*, 46 F.4th 739 (8th Cir. 2022).[6] As summarized by the federal district court, Bret alleged:

> On August 8, 2017, he received HRI tax documents during discovery in a lawsuit against the Defendants in state court revealing that HRI shares issued in 1994 to Osborne, which were subsequently transferred to Bret in 2000, were void because she failed to provide proper consideration when she established the corporation. Bret contends, "the transfer of the

---

6. The RICO action was commenced on February 21, 2021, and Bret filed an amended complaint in that action one day after oral argument before this Court in *Healy II*.

> land did not and could not represent consideration for the shares of the Corporation because the property interest in the land never belonged to Osborne personally. *At the time of formation of HRI, the land belonged to the partnership-not to Osborne.*" Therefore, according to Bret, *because an asset of a partnership belongs to the partnership and not an individual, the exchange of the partnership's interest in real property for the issuance of HRI stock to Osborne was invalid and thus the shares issued were void.*

*Id.* (citation modified). The district court dismissed Bret's suit based on res judicata, noting first that "Bret claimed injury in the state court action from the 1995 transfer from the partnership to HRI because it deprived him of his interest held by the partnership. In the amended complaint, Bret claims injury from the 1995 transfer from the partnership to HRI because it was part of an illegitimate stock issuance that ultimately provided the vehicle for the RICO conspiracy. Therefore, the 'underlying facts' which give rise to each cause of action are the same." *Id.* at 743.

[¶23.] On appeal, the Eighth Circuit Court of Appeals affirmed, noting that, "in 1995, Osborne conveyed all of the partnership's real-property interest in the ranch to HRI," including Bret's share. The court further noted:

> *In 2000, Osborne sold one third of her shares of HRI to Bret and one third to each of his two brothers, Bryce Healy and Barry Healy.* From 1999 to 2017, Bryce served as secretary and treasurer of HRI with responsibility for all of the financial recordkeeping. Bret received yearly Schedule K-1 tax forms, which showed that he owned one third of the stock of HRI.

*Fox*, 46 F.4th at 742 (emphasis added). The Eighth Circuit concluded, "Bret is again addressing the same wrong he identified in [*Healy I*]—the alleged wrongful conduct by members of his family to vest HRI with ownership of the Ranch." *Id.* at

744 (citation omitted). The resolution of that action in district court and on appeal was based on res judicata.

[¶24.] Bret and HRP brought a second federal court action against this Court, HRI, Mary Ann, Barry, Bryce, Fox, and the Mineses, alleging a due process violation by this Court, fraud, misrepresentation, and other misconduct. *Healy v. Sup. Ct. of S.D.*, No. 23-CV-04118, 2023 WL 8653851, at *1 (D.S.D. Dec. 14, 2023) (*Healy III*), *reconsideration denied*, No. 23-CV-04118, 2024 WL 2150336 (D.S.D. Apr. 11, 2024). In an amended complaint filed March 24, 2021, Bret also named the South Dakota Supreme Court justices and circuit court judge, Jon Sogn, in their official and individual capacities, claiming a deprivation of his civil rights under 42 U.S.C. § 1983. *Id.*

[¶25.] Important to the Court's determination here, in *Healy III*, the district court found that Bret sought to have the district court "*declare Plaintiff Bret Healy to own two-thirds of the shares of HRI, contrary to what was adjudicated in state court; to reduce Barry and Bryce Healy's ownership of HRI to one-sixth each, contrary to what was adjudicated in state court; and for other and further relief.*" *Id.* at *2 (emphasis added). The district court described Bret's action as "an attempt to have this Court reverse *Healy I, Healy II*, and *Fox* and declare Bret Healy the winner, notwithstanding the Supreme Court of South Dakota decisions and the prior federal court litigation affording res judicata effect to those decisions." *Id.* The district court dismissed the action, noting in part, "Res judicata on several levels now bars the extraordinary relief [Bret] seek[s] from this Court—reversal or vacating of the Eighth Circuit final decision from the prior litigation and reversal

and vacating of three final decisions of the Supreme Court of South Dakota." *Id.* at *12.

[¶26.] In addition, the district court imposed sanctions under Rule 11 of the Federal Rules of Civil Procedure, concluding in part, "the arguments made about . . . how res judicata does not bar the state-law claims were not warranted by existing law or a good faith, nonfrivolous argument for some modification or extension of existing law. The history of litigation combined with the absence of merit of the claims justify an award of attorney fees to the non-state defendants as sanctions under Fed. R. Civ. P. 11(b)(1) and (2)." *Id.* The district court awarded attorney fees to Mary Ann in the amount of $16,487.51; to HRI, Barry, Bryce, and the Mineses in the amount of $14,463.63; and to Fox in the amount of $18,320.56. *See Healy III,* 2024 WL 2150336, at *2.[7] On appeal from the district court's order dismissing his action and imposing sanctions against him, the Eighth Circuit Court of Appeals affirmed without opinion. *Healy v. Sup. Ct. of S.D.*, No. 24-1996, 2025 WL 999468, at *1 (8th Cir. Apr. 3, 2025) (per curiam).[8]

---

7. The district court's decision on sanctions came after the circuit court in this case imposed sanctions against Bret in the amount of $240,000, and after notice of appeal in this case was filed. Further, as a result of the circuit court's sanctions in this case, Bret also instituted another action in federal district court, naming the clerk of court and circuit court judge Smith as defendants in *Healy v. Miller*, 4:24-cv-4053-RAL, Doc. 1, Doc 1-1. *See Healy v. Sup. Ct. of S.D.*, No. 23-CV-04118, 2024 WL 2150336, at *1 (D.S.D. Apr. 11, 2024), *aff'd*, *Healy v. Miller*, No. 24-2897, 2025 WL 1833809, at *1 (8th Cir. July 3, 2025) (per curiam).

8. By order dated May 9, 2025, the Eighth Circuit Court of Appeals denied Bret's petition for rehearing and for rehearing en banc. The United States Supreme Court denied Bret's petition for writ of certiorari. *Healy v. Sup. Ct. of S.D.*, No. 25-276, 2025 WL 3131828, at *1 (U.S. Nov. 10, 2025).

*The present case*

[¶27.]     The underlying case from which this appeal arose began with a petition for court supervised dissolution of HRI, which stated that the shareholders of HRI were brothers, Bryce Healy, Barry Healy, and Bret Healy, who each owned 1/3 of the total shares of the corporation.  The petition alleged that HRI's board of directors adopted a plan of liquidation and dissolution and that a "majority of outstanding shares of the common stock voted in favor of dissolution and adoption of a plan."

[¶28.]     HRP, through Bret, and his legal counsel Volesky, filed a motion to dismiss, asserting that HRP "owns, at least, a majority of the capital stock" in HRI and that the "capital stock of [HRI] originates solely from the land transferred to it by [HRP] as is shown by the capital structure on [HRI's] tax returns."  HRP alleged that it opposed the plan of liquidation and dissolution and that a majority of shares of HRI "entitled to vote did not approve the proposal for voluntary dissolution." HRP filed a brief in support of its motion to dismiss, in which it argued that when HRP transferred real property to HRI in 1995, the warranty deed transferring the property stated "for the record that [HRP] was owner of at least a majority (in fact all) of the capital stock of [HRI]" and that HRI's "capital stock originates solely from the real property transferred via Warranty Deed."  HRP also argued that the Ranch is the property of HRP not HRI, claiming that Mary Ann did not have the authority to transfer the "Partnership's property"—the Ranch—without Bret's consent.  HRP maintained that "all the capital contributed to [HRI] was contributed by [HRP].

Indeed, [HRP] paid for the capital stock of [HRI] when record title to the Partnership's real property was transferred via Warranty Deed."

[¶29.]     Along with the motion to dismiss, Bret filed a certification as the "managing, majority partner" of HRP, and a "substitute motion" that he claimed was "proposed and supported by the shareholders holding a majority of the outstanding shares of [HRI's] common, paid-up, capital stock, at a meeting of the shareholders held November 15, 2023." Bret signed the certification as managing partner of HRP.

[¶30.]     Prior to the circuit court's consideration of the merits of the petition and motion to dismiss, the circuit court, on its own initiative, issued an order to show cause, directing both Bret and Volesky to establish that they did not violate SDCL 15-6-11(b) and should not face sanctions for such conduct. In support of the order to show cause, the circuit court "alleged that said motion [to dismiss] is wholly unsupported by law, unsupported and indeed contradicted by well-established facts and numerous litigation, litigation that Tucker Volesky, as counsel for Bret Healy and [HRP], is clearly aware of the fact that his clients Bret Healy and Healy Ranch Partnership collectively own no more than a one third interest in [HRI], and that in fact Bret Healy, Bryce Healy and Barry Healy each own 1/3 of all outstanding shares of [HRI], and that therefore 2/3 of said shares, those owned by Bryce and Barry Healy, voted to authorize dissolution." The order to show cause stated that Bret's filings were "put forth with the sole intent to relitigate past lawsuits and to harass and cause unnecessary delay or needless increase in the cost of litigation."

[¶31.] In response to the order to show cause, HRP/Bret took issue with the various courts' determinations regarding the ownership of HRI and claimed the "facts from the previous litigation cannot be said to be well-established." Bret also noted that HRI had not moved for sanctions.

[¶32.] A hearing was held on Bret's motion to dismiss and the order to show cause on January 23, 2024. Bret testified at the hearing and his testimony was largely consistent with his written response to the order to show cause. The circuit court denied the motion to dismiss but took the question of Bret's and Volesky's violation of SDCL 15-6-11 and possible sanctions under advisement.

[¶33.] In a detailed, 35-page memorandum decision dated March 18, 2024, the circuit court determined both Bret and Volesky violated SDCL 15-6-11(b). In doing so, the circuit court provided an overview of the lawsuits in which Bret was involved, often represented by Volesky. The court also set forth the previous sanctions and attorney fees that were imposed against Bret in many of these cases. Based on the previous courts' determinations in those cases, the court found that in filing the motion to dismiss the petition for supervised dissolution, "it cannot be said that Bret Healy was merely putting forth an unsuccessful theory or making a good faith effort to modify existing law. Here the very issue he is litigating has been determined contrary to his position, and frequently." Accordingly, the circuit court concluded:

> It is clear and the finding of this [c]ourt that Mr. Healy is motivated to bring this action not by any belief in a supported legal claim, as those have all been turned away at the courthouse steps, but rather a clear and continuing effort to harass or cause unnecessary delay or needlessly increase the cost of litigation.

The circuit court's imposition of sanctions was based on its finding that the sole basis for Bret's challenge to the dissolution of HRI was his claim "that he has greater ownership of [HRI], despite prior rulings by many courts that have heard these issues." The court imposed sanctions because it concluded that Bret's contention that HRP, and not Bryce and Barry, owned a majority of the stock of HRI has been decided many times previously.

[¶34.] The circuit court imposed a monetary sanction of $240,000 against Bret. In support of that amount, the court noted that although in previous cases Bret was ordered to pay attorney fees totaling over $120,000, he was undeterred, and concluded "[p]ast sanctions have had no effect on Bret." As such, it was "the intent of the [c]ourt to impress upon Mr. Healy that his actions have consequences and should not continue, and [it is] the finding of this [c]ourt that the doubling of his past sanctions will do so."

[¶35.] Bret appeals the circuit court's imposition of sanctions, raising several issues[9] that we restate as follows:

1. Whether Bret, as a represented party, is subject to sanctions under SDCL 15-6-11.

2. Whether the circuit court abused its discretion in imposing a monetary sanction against Bret.

---

9. Bret raises additional issues for the first time in his reply brief. "[I]t is well settled that a party may not raise an issue for the first time in the reply brief when the opposing party on appeal can no longer address it." *State v. Washington*, 2024 S.D. 64, ¶ 44 n.4, 13 N.W.3d 492, 505 n.4 (citations omitted). As discussed below, we exercise our discretion to address one of these issues raised for the first time in his reply brief.

**Standard of Review**

[¶36.]     In *Smizer v. Drey*, the Court clarified the standard of review for appeals pursuant to SDCL 15-6-11(a) through 15-6-11(d).  2016 S.D. 3, 873 N.W.2d 697.  We noted that SDCL 15-6-11(e) requires this Court to consider these appeals "without any presumption of the correctness of the trial court's findings of fact and conclusions of law," but observed that our case law directs us to review such appeals for an abuse of discretion.  *Id.* ¶ 10, 873 N.W.2d at 701.

[¶37.]     We then considered the United States Supreme Court's treatment of this issue in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 403–04 (1990), where the "Supreme Court specifically examined the issue of an appropriate standard of review when a court imposes Rule 11 sanctions."  *Smizer*, 2016 S.D. 3, ¶ 11, 873 N.W.2d at 701.  And, although we acknowledged "that the federal rule does not contain language similar to SDCL 15-6-11(e)—that this Court is not to presume 'the correctness of the trial court's findings of fact and conclusions of law'"—we found the reasoning in *Cooter & Gell* "helpful because there is no decisive distinction between the policy considerations implicated by our rule and the federal rule."  *Id.*  We also noted that "nothing in SDCL 15-6-11(e) imposes a specific standard of review or mandates that this Court reweigh the evidence and reconsider the facts already considered and weighed by the circuit court."  *Id.*

[¶38.]     We further explained:

> [T]he decision to impose Rule 11 sanctions under SDCL 15-6-11(b) involves multiple factual and legal considerations.  The circuit court must examine factual questions related to the attorney or unrepresented party's representations to the court.  SDCL 15-6-11(b).  Legal issues are implicated when the court considers whether "[t]he claims, defenses, and other legal

> contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" SDCL 15-6-11(b)(2). And if the circuit court determines a violation occurred, it may exercise its discretion and "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated § 15-6-11(b) or are responsible for the violation." SDCL 15-6-11(c).

2016 S.D. 3, ¶ 12, 873 N.W.2d at 702 (second and third alterations in original).

[¶39.] The Court thus held that based on those considerations and the language of SDCL 15-6-11, "we continue to adhere to our abuse of discretion standard of review." *Id.* ¶ 14. "An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (citation omitted). "An abuse of discretion also occurs when the court bases 'its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (citation omitted).

## Analysis and Decision

### 1. *Whether Bret, as a represented party, is subject to sanctions under SDCL 15-6-11.*

[¶40.] Bret first argues he is not a sanctionable party, claiming Rule 11 restricts its reach to an attorney or unrepresented party, and he is neither. Bret contends that he "was not initially even a party to the action." While Bret did not initiate the action, he signed a certification on behalf of HRP, asserting that HRP owned the majority of HRI's stock, and as the alleged majority owner, HRP submitted a substitute motion opposing the dissolution and a motion to dismiss. As a shareholder of HRI, Bret was personally served with the petition for supervised dissolution.

[¶41.] SDCL 15-6-11(b) and its federal counterpart, Fed. R. Civ. P. 11(b), provide generally, that "those who submit pleadings, written motions, and other papers to the district court, whether attorneys or unrepresented parties, must sign those documents to signify that various certifications are being made." 5A Fed. Prac. & Proc. Civ. § 1331 (4th ed.). SDCL 15-6-11(b) states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The text of Rule 11(b) provides that a signature by an attorney and unrepresented party on a pleading or other document filed with the court makes four certifications, including that any claim or defense is legally supportable.

[¶42.] However, subsection (c) of Rule 11 applies more broadly by permitting a court to "impose an appropriate sanction upon the attorneys, law firms, *or parties*" who have violated Rule 11(b)'s certification standards or who "are responsible for

the violation." (Emphasis added.) In other words, a party represented by counsel may be subject to sanctions even if they have not signed the pleadings. But, Rule 11(c)(2) explicitly prohibits a monetary sanction against a represented party that is based only on a violation of Rule 11(b)(2), relating to the certification that the claims "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." SDCL 15-6-11(b)(2). As such, monetary sanctions *are* permitted against a represented party for all other violations of Rule 11(b)(2). Indeed, courts have permissibly imposed sanctions against represented parties for violations of Rule 11 that are not based upon a finding of frivolity. *See, e.g.*, *Kountze ex rel. Hitchcock Found. v. Gaines*, 536 F.3d 813, 819 (8th Cir. 2008) (affirming sanctions against a party and his attorney where the district court determined that where the prior action was dismissed with prejudice, naming a party "in the current action must have been for an improper purpose"); *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997), *as amended on denial of reh'g* (Mar. 26, 1997) (holding the district court did not abuse its discretion in concluding that Buster's action "was brought to harass the Trustees," and therefore, affirming sanctions against plaintiff and his attorney) (citation omitted).

[¶43.] The circuit court's memorandum decision discusses both that Bret's claims were asserted for an improper purpose and were frivolous:

> In this case, it cannot be said that Bret Healy was merely putting forth an unsuccessful theory or making a good faith effort to modify existing law. Here the very issue he is litigating has been determined contrary to his position, and frequently. Objectively and on its face this action is frivolous defined. No rational argument exists to support it, no basis to argue for

> change has any chance of success, and no reasonable person
> should expect a favorable ruling.

The court, in a footnote, also found "that the basis of [Bret's] challenge to dissolution is frivolous, and intended only to delay and harass." The impetus for the circuit court's sanctions was the fact that Bret claimed greater ownership of HRI "despite prior rulings by many courts that have heard these issues." However, the circuit court's findings, conclusions, and decision as a whole reflect that the monetary sanction *against Bret* was based on the improper purpose of his actions. To be sure, the circuit court discussed both that the claims asserted were frivolous and that they were advanced for an improper purpose. But the court's discussion related not only to Bret, but also to his attorney Volesky, who was sanctioned for violating *three* subsections of SDCL 15-6-11(b)—those relating to improper purpose, frivolous arguments, and lack of evidentiary support. In contrast, the circuit court concluded that Bret only violated one subsection—SDCL 15-6-11(b)(1)—relating solely to improper purpose. The court explained, "It is clear and the finding of this [c]ourt [is] that Mr. Healy was motivated to bring this action not by any belief in a supported legal claim, as those have all been turned away at the courthouse steps[,] but *rather a clear and continuing effort to harass or cause unnecessary delay or needlessly increase the cost of litigation.*" (Emphasis added.)

[¶44.] Although the circuit court concluded that Bret's claims were both frivolous and asserted for an improper purpose, the court's decision is clear that the legal basis for its sanction against Bret was expressly limited to the finding of improper purpose, as it directed in its order, "that Bret Healy be sanctioned in the amount of $240,000 for violating SDCL 15-6-11*(b)(1)*." (Emphasis added.) The

court's findings of fact and conclusions of law also expressly conclude that Bret violated only the subsection relating to improper purpose—"Bret violated SDCL 15-6-11(b)(1)" and "Tucker Volesky violated SDCL 15-6-11(b)(1)-(3)."[10]

[¶45.] The dissent questions the ability to sanction Bret, stating Bret "was not responsible for the legal arguments in this case; his lawyer, Volesky, was." But the history of Bret's seemingly ceaseless litigation does not support this. Although different attorneys were involved in several of the actions, the common denominator is the active involvement of Bret in each of these actions. The dissent also attributes Bret's improper purpose to the frivolous arguments, stating that the findings of improper purpose were "founded upon" the frivolous arguments by Volesky, making them "effectively one and the same." But the record supports the circuit court's conclusion that his frivolous claims were grounded on the improper purposes identified by the court as Bret's "clear and continuing effort to harass or cause unnecessary delay or needlessly increase the cost of litigation." The record contains evidence that Bret and Volesky both violated Rule 11 and both should bear responsibility. The circuit court's decision to hold Bret responsible for his own violation of SDCL 15-6-11(b) was not an abuse of discretion.

[¶46.] In short, while a court cannot impose monetary sanctions against a represented party for a violation of Rule 11(b)(2), that was not the basis for the

---

10. We also note that Bret's brief addresses the circuit court's finding that his "motion to dismiss was presented for an improper purpose." Likewise, HRI's appellate brief discusses whether the circuit court erred in sanctioning Bret for "presenting papers before the court for an improper purpose" and arguing the circuit court's "sanctions against Bret Healy were for violations of SDCL 15-6-11(b)(1), and thus do not run afoul of the limitation for a represented party contained in SDCL 15-6-11(c)(2)(A)."

circuit court's sanction against Bret here. As such, the circuit court did not err in concluding that Bret was subject to monetary sanctions under SDCL 15-6-11(b)(1).

### 2. Whether the circuit court abused its discretion in imposing a monetary sanction against Bret.

[¶47.] Bret maintains that the circuit court's sanction was erroneous, claiming (1) he did not violate SDCL 15-6-11(b), (2) that his reliance on the advice of counsel absolves him of responsibility, and (3) that the amount of sanctions—$240,000—was excessive.

#### a. Whether the circuit court erred in determining Bret violated SDCL 15-6-11(b)(1).

[¶48.] Bret challenged the petition for dissolution of HRI based on his claim that HRP owns, at least, a majority of the capital stock in HRI. The circuit court found that Bret's ownership claim had been previously (and frequently) determined contrary to his position. The court also determined that Bret's opposition to the corporate dissolution was not motivated by any belief in a supportable legal claim, but rather by a clear and continuing effort to harass or cause unnecessary delay or needlessly increase the cost of litigation, in violation of SDCL 15-6-11(b)(1).

[¶49.] Bret first asserts the circuit court erred in concluding he violated Rule 11 because of its "complete misunderstanding of legal precedent which had discussed – but not determined – the ownership of HRI. Judge Smith erroneously claims the history of litigation proves that Bret's continued claims of ownership are false. The truth is that ownership of Healy Ranch has never been substantively resolved." In support of his assertion, Bret summarizes four of the lawsuits brought by him or HRP.

[¶50.]        Beginning with *Healy I*, Bret claims the Court "did not determine ownership of anything."  It is true that in affirming dismissal of Bret's claims in *Healy I* based on the applicable statutes of limitations, this Court did not determine ownership of the Ranch.  *Healy I*, 2019 S.D. 56, ¶ 21, 934 N.W.2d at 563 ("We decline to address Bret's claim of ownership[.]").  Bret then maintains that the Court also did not decide ownership in *Healy II*, where we stated:

> [W]e agree with Bret's assertion that our decision in [*Healy I*] cannot be used to invoke issue preclusion in this case.  The question decided in [*Healy I*] was whether Bret's claims against his family and former attorney were time-barred.  As indicated above, we did not determine the question at issue in this quiet title action, which relates to ownership of the Ranch.

*Healy II*, 2022 S.D. 43, ¶ 46, 978 N.W.2d at 799–800.

[¶51.]        However, Bret ignores our later discussion in *Healy II*, where we explained:

> In our view, Bret's quiet title counterclaim in this case is an overt effort to litigate the same *cause of action* that he litigated in [*Healy I*].  Although the specific legal theories advanced in the two cases are different, of course, Bret is again addressing the same wrong he identified in [*Healy I*]—the alleged wrongful conduct by members of his family to vest HRI with ownership of the Ranch.  The underlying facts are the same, as is Bret's principal argument that HRI does not truly own the Ranch.

*Id.* ¶ 49 (footnote omitted).  After addressing each of the claims Bret made in the prior actions, we held that Bret's notice of claim was *precluded*, stating:

> Here, Bret was aware of each and every fact necessary to have brought his quiet title action in 2017.  Instead, he elected to pursue different claims and remedies whose lack of success should have signaled the end of the dispute.  He cannot now extend the life of those claims against members of his family by repurposing them in an effort to litigate the same wrong premised upon the same facts.  Though his notice of claim may

> have been timely filed, the cause of action is precluded, and the notice should be voided on this basis.

*Id.* ¶ 59, 978 N.W.2d at 802–03.

[¶52.]      In regard to our decision in *Mines*, Bret claims we "held that the [c]ircuit [c]ourt incorrectly read *Healy I* by utilizing certain factual findings regarding ownership of the Ranch." What Bret ignores from the *Mines* decision, which is pertinent to our consideration of sanctions, is that we exposed the inconsistencies in Bret's theories, noting that in *Healy I*, Bret acknowledged RH-2 was transferred, but in *Mines*, he claimed that portion of the property was not transferred, nor could it have been because he claimed Mary Ann lacked the authority to do so. *See Mines*, 2022 S.D. 44, ¶¶ 50–52, 978 N.W.2d at 782.

[¶53.]      Bret also cites to the federal district court's opinion in *Healy v. Supreme Court of South Dakota*, where the district court noted:

> The court in *Healy I* specifically "decline[d] to address Bret's claim of ownership" and instead "center[ed] on the timeliness of Bret's claims." *Healy I*, 934 N.W.2d at 563. The court found Bret's contract and torts claims untimely and barred by the statutes of limitations; in so deciding, the *Healy I* court effectively prevented Bret Healy from challenging that each of Bret, Barry, and Bryce owned one-third of HRI, *indirectly confirming the ownership status quo*. In *Healy II*, a quiet title action, Plaintiffs attempted to argue HRP owned the Healy ranch, but the Supreme Court of South Dakota determined the claim was barred under res judicata. In *Mines*, HRP, controlled by Bret, argued that it, and not HRI, owned certain land and filed an action to quiet title to property, but the court decided against HRP and determined the Mineses retained title. Lastly, in *Fox*, this Court determined Plaintiff Bret Healy's action under 18 U.S.C. § 1964(c) of the Racketeer Influenced and Corrupt Organizations Act was barred by res judicata and ruled for the defendants, which the Eighth Circuit affirmed on the same grounds.

#30666

2023 WL 8653851, at *1 n.1 (alterations in original) (emphasis added). Bret claims that the federal district court did not "cite any paragraph or any prior decision, or any parts of the record from previous cases, [sic] for this declaration[,] which begs the question as to what and when such status quo came into effect." Bret then surmises that the district court's "declaration, and Judge Smith's reliance thereon, constitutes impermissible, vague fact finding."

[¶54.]     Bret's assertions are patently wrong. When addressing the defendants' motion to dismiss based on res judicata, the federal district court analyzed the prior cases, explaining:

> Res judicata plainly bars the claims pleaded here because the state-law claims—Claims 2, 3, and 4—arise out of the same nucleus of facts where "the wrong sought to be redressed is the same" as in the prior state court case. In *Healy I*, *Healy II*, and the prior federal litigation, like in this case, "the wrong sought to be redressed" is Plaintiff Bret Healy's assertion to greater ownership in HRI and its assets, or in the case of *Mines*, HRP's claim to HRI assets. Plaintiffs attempt to argue the wrongs sought to be redressed in this case relate to "frauds, misrepresentations, misconduct and fraud upon the courts" occurring in the litigation of the prior cases, . . . but Plaintiffs' Prayer for relief requests this Court "[d]eclar[e] Bret Healy owner of two-thirds of all the outstanding shares of HRI capital stock," . . . thereby undermining this argument. Indeed, Plaintiffs' Prayer in the Amended Complaint seeks to have this Court vacate all prior state and federal decisions and declare "Plaintiffs' future rights and remedies unaffected by" those decisions. . . . The first element of res judicata is met because the "fraud, misrepresentation and misconduct" claims arise out of the same nucleus of facts.

*Id.* at *10. Contrary to Bret's claim, the district court did cite to the previous cases—both to the pleadings and to the decisions—and the district court did not engage in "vague fact finding" as Bret asserts in his brief.

-28-

[¶55.] Considering these prior cases in their entirety, the circuit court in this case determined that Bret's claims were barred by principles of res judicata and/or collateral estoppel. Although this was the primary basis for the circuit court's ultimate conclusion that Bret's claims were brought for an improper purpose, Bret has not addressed these principles or the circuit court's findings in regard to them. Such failure waives the issue on appeal. *First Nat. Bank in Sioux Falls v. Drier*, 1998 S.D. 1, ¶ 20, 574 N.W.2d 597, 601 (plaintiff's failure to address the issue in its brief waived the issue on appeal). Nevertheless, we exercise our discretion to address these important issues because whether Bret's claims were precluded by res judicata and/or collateral estoppel is foundational to the propriety of the circuit court's sanctions.

[¶56.] This Court has previously explained the concepts of res judicata, collateral estoppel, claim preclusion, and issue preclusion in some detail:

> "Res judicata consists of two preclusion concepts: issue preclusion and claim preclusion." We have previously defined these two concepts in the following terms:
>
>> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit[.]
>
> The difference between issue and claim preclusion is largely "one of degree and emphasis[.]" However, "claim preclusion[ ] is broader than the issue preclusion function of collateral estoppel." For example, claim preclusion "precludes relitigation of a claim . . . actually litigated *or which could have been properly raised.*" But issue preclusion "prevents relitigation *only of issues actually litigated* in a prior proceeding." What is prohibited, then, under claim preclusion is the cause of action

-29-

> itself, but under issue preclusion, it "is the particular issue or fact common to both actions."

*Healy II*, 2022 S.D. 43, ¶¶ 40–41, 978 N.W.2d at 798 (alterations and emphasis in original) (citations omitted). Res judicata arguments are analyzed under a well-established four-part test, which we have applied to both issue and claim preclusion:

> (1) the issue in the prior adjudication must be identical to the present issue, (2) there must have been a final judgment on the merits in the previous case, (3) the parties in the two actions must be the same or in privity, and (4) there must have been a full and fair opportunity to litigate the issues in the prior adjudication.

*Id.* ¶ 42, 978 N.W.2d at 799 (citation omitted).

[¶57.] With regard to claim preclusion, however, "we have generally not required exacting 'issue-identity' with the earlier action" so that "our review is *not* restricted to whether the specific question posed by the parties in both actions was the same or whether the legal question posed by the nature of the suit was the same." *Id.* ¶ 44 (citation omitted). When analyzing claim preclusion "we look to whether the second action 'attempt[s] to relitigate a prior determined *cause of action*[.]'" *Id.* (alterations in original) (citation omitted). "For purposes of [claim preclusion], a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce. The test is a query into whether the wrong sought to be redressed is the same in both actions." *Id.* ¶ 45 (alteration in original) (citation omitted). "If the claims arose out of a single act or dispute and one claim has been brought to a final judgment, then all other claims arising out of that same act or dispute are barred." *Id.* (citation omitted).

[¶58.]    Regarding the first element—whether Bret is attempting in this action to relitigate a previously-determined cause of action—we need look no further than the federal district court's decisions in *Fox* (the RICO action) and *Healy III*.  In both of those cases, the district court analyzed whether the claims were precluded under res judicata.  In the amended complaint Bret filed in *Fox*, he asserted that the defendants in that action "repeatedly represented to [Bret], in documents mailed over the course of seventeen years, that [Bret] owned 1/3 of the stock of [HRI], which would give him at least a 1/3 interest in the [R]anch."  Specifically, Bret alleged that in 2000, an agreement was signed in which Bret's mother agreed to "sell all of her shares in HRI to the three brothers, with each brother to acquire one-third."  Bret made several other allegations regarding the ownership of HRI, including that the "HRI shares issued in 1994 to Osborne, which were subsequently transferred to Bret in 2000, were void because she failed to provide proper consideration when she established the corporation."  *Fox*, 572 F. Supp. 3d at 734.

[¶59.]    The defendants in *Fox* moved to dismiss Bret's claims, arguing, inter alia, that they were "barred by the doctrine of res judicata, specifically claim preclusion based on Bret having litigated and lost related claims in [the] state court action."  *Id.* at 736.  Applying the four elements of res judicata, the district court concluded first that the "underlying facts" giving rise to the causes of action in that case were the same as the underlying facts in *Healy I*:

> In the Amended Complaint, Bret claims the Defendants engaged in a RICO conspiracy to deceive him into believing he owned an interest in HRI to induce him into making substantial investments in HRI.  Importantly, the RICO conspiracy Bret alleges stems from the same alleged fraudulent transfer of property interest from the partnership to HRI that formed the

-31-

> central theme of Bret's state court action. *See Healy [I]*, 934 N.W.2d at 564–65.

*Id.* at 743 (citation modified).

[¶60.]     And more recently, in the action against this Court, the district court noted that Bret's prayer for relief included a declaration that Bret is the "owner of two-thirds of all the outstanding shares of HRI capital stock." The district court concluded the "state law claims" of fraud "[arose] out of the same nucleus of facts where 'the wrong sought to be redressed is the same' as in the prior cases." *Healy III*, 2023 WL 8653851, at *10. The district court further explained: "In *Healy I*, *Healy II*, and the prior federal litigation [*Fox*], like in this case [*Healy III*], *'the wrong sought to be redressed' is [Bret's] assertion to greater ownership in HRI and its assets*[.]" *Id.* (emphasis added).

[¶61.]     Through his motion to dismiss the petition for dissolution in the present case, Bret has yet again attempted to assert greater ownership in HRI. As the district court concluded, that very issue has been addressed and disposed of for a variety of reasons in a number of prior cases. Bret has recalibrated the theories behind his many lawsuits over the course of seven years of litigation, but neither the nucleus of facts, nor the ultimate basis of many of his claims—ownership of HRI—have varied. The district court in *Fox* recognized that "while Bret's two claims rely on different legal theories, that alone does not bar the application of res judicata under South Dakota law." *Fox*, 572 F. Supp. 3d at 744. In so holding, the district court cited to this Court's opinion in *Farmer v. South Dakota Department of Revenue & Regulation*, where we held:

> When examining whether the question in one action was the same as in a subsequent action, our review is not restricted to whether the specific question posed by the parties in both actions was the same or whether the legal question posed by the nature of the suit was the same. Rather, we review whether the claims asserted in both suits arose out of a single dispute and whether one claim has been brought to a final judgment on the merits.

781 N.W.2d 655, 660 (S.D. 2010) (citation omitted).

[¶62.] We, therefore, conclude that the first element of our claim preclusion test is satisfied because the issue raised by Bret in his motion to dismiss the petition for dissolution—the ownership of HRI—was the same issue adjudicated in several previous cases. The second element is likewise satisfied because the district court in *Healy III* dismissed the ownership claim on the merits, which was affirmed on appeal,[11] and also in the actions preceding *Healy III*. *See Healy II*, 2022 S.D. 43, ¶¶ 52–53, 978 N.W.2d at 801 ("For purposes of res judicata, the term has come to be applied to some judgments . . . that do not pass upon the substantive merits of a claim. Our decision in [*Healy I*] determined that Bret's legal rights were no longer enforceable and that the various defendants faced no liability under the claims asserted. Though the decision may not have examined the substantive merits of the various claims, it was nonetheless a final judgment on the merits entitled to preclusive effect because it settled the rights and obligations of the respective parties.") (citation modified).

[¶63.] For the third element of claim preclusion—the parties in the two actions must be the same or in privity—we "look beyond the nominal parties" and

---

11. *Healy v. Sup. Ct. of S.D.*, No. 24-1996, 2025 WL 999468 (8th Cir. April 3, 2025).

treat "those whose interests are involved in the litigation and [those] who conduct and control the action or defense" as the real parties who are bound by "any judgment that may be rendered." *Matter of Guardianship of Janke*, 500 N.W.2d 207, 209 (S.D. 1993) (citations omitted). Here, Bret was either a named plaintiff or was acting as plaintiff and controlled the action for or on behalf of HRP. The other parties to the present action—HRI, Bryce, and Barry—were parties within the definition above in *Healy I*, *Healy II*, and *Fox*. The third element of the res judicata test has been met.

[¶64.] The fourth and final element—a full and fair opportunity to litigate the issues in the prior adjudication—has also been satisfied. The Court in *Healy II* explained: "For a claim to be barred by res judicata, the claim need not have been actually litigated at an earlier time. Rather, the parties only need to have been provided 'a fair opportunity to place their claims in the prior litigation.'" 2022 S.D. 43, ¶ 56, 978 N.W.2d at 802 (citation omitted). As we noted in *Healy II*, Bret was aware of facts necessary to assert a greater ownership interest in the Ranch, in *Healy I*, but he instead "elected to pursue different claims and remedies" and was, therefore, foreclosed from asserting the ownership issue in subsequent cases. *Id.* at ¶ 59.

[¶65.] In sum, the basis for Bret's challenge to the dissolution—the claimed ownership of HRI—has been decided against him several times previously based on judicial estoppel and res judicata, and such an argument is again precluded under our settled principles of claim preclusion. The circuit court did not err in so concluding. We must next determine whether the circuit court erred in determining

Bret's advancement of this precluded claim is sanctionable conduct under SDCL 15-6-11(b)(1).

[¶66.]    The circuit court found that Bret's assertion of ownership of HRI via his motion to dismiss the dissolution petition was not motivated by a belief in a supported legal claim because such claim has been previously rejected as precluded. The court thus found that Bret was instead motivated by a desire to harass or cause unnecessary delay or needlessly increase the costs of litigation. Bret argues the court erred in determining his motion to dismiss was motivated by an improper purpose. We afford no presumption that this finding is correct. SDCL 15-6-11(e).

[¶67.]    From our review of the facts of this case and the extensive history of the litigation involving Bret, the circuit court's conclusion that Bret violated SDCL 15-6-11(b)(1) was not clearly erroneous. For nearly a decade, Bret has battled with his mother and brothers regarding the ownership of HRI and the Ranch. Bret has asserted the same or similar claims of such ownership in five actions in both state and federal courts and has appealed those courts' decisions to this Court and the Eighth Circuit. Each time these courts ruled against him, Bret reframed the issues and his arguments and produced additional and sometimes contradictory evidence in an attempt to resurrect the same claims of ownership.

[¶68.]    Considering this history and the various courts' decisions unmistakably determining that Bret's ownership claims were precluded many times over, the circuit court could find that Bret asserted these actions for improper purpose. *See Crowley v. Spearfish Indep. Sch. Dist.*, 445 N.W.2d 308, 313 (S.D. 1989) (affirming a sanction award against a party after finding that "harassment

was undertaken" by a party who had abused the court system by "continu[ing] to use the courts to decide matters which have already been decided or which they failed to urge in previous proceedings"); *Kountze*, 536 F.3d at 819 (affirming sanctions where the district court determined that the prior action against a particular named party was dismissed with prejudice, naming the same party "in the current action must have been for an improper purpose" (citing Fed. R. Civ. P. 11(b)(1))); *Buster*, 104 F.3d at 1190, *as amended on denial of reh'g* (Mar. 26, 1997) (holding the district court did not abuse its discretion in concluding that Buster's action "was brought to harass the Trustees," noting it has held that "'successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11'" (citation omitted)); *Stone v. Baum*, 409 F. Supp. 2d 1164, 1171 (D. Ariz. 2005) (holding that because plaintiffs were "repeatedly informed that such repetitive suits are barred by res judicata, there can be no conclusion except that Plaintiffs filed this case for an improper purpose, such as to harass Albertsons and/or cause Albertsons undue litigation costs. Rule 11 sanctions are warranted.").

[¶69.] Based upon the number and frequency of the cases filed by Bret against family members and others, the circuit court could reasonably find that Bret's unrelenting efforts to relitigate the same issues served no purpose other than to harass or cause unnecessary delay or needlessly increase the cost of litigation. The circuit court's finding that Bret violated SDCL 15-6-11(b)(1) was not clearly erroneous.

> b. *Whether Bret's reliance on the advice of counsel absolves him of responsibility.*

[¶70.] Bret claims he relied "in good faith on at least a half dozen attorneys and other experts regarding the sufficiency of HRP's claims" and that he should not be personally sanctioned. In support, Bret cites to *Scanning Electron Microscopy Inc. v. Institute For Scientific Information, Inc.*, where the plaintiff submitted an affidavit detailing his discussions with his attorney and his attorney's legal research into the allegations. No. 81 C 01781, 1990 WL 36766, at *1 (N.D. Ill. Mar. 2, 1990). The court in that case noted there was no evidence offered "to rebut this evidence that plaintiff relied in good faith on the advice of its attorney" nor was there any evidence that "plaintiff misrepresented any facts" to his attorney. *Id.* The court, therefore, held that it was "not a situation where a plaintiff, at little expense to itself, has filed a 'nuisance' suit in an effort to obtain a quick settlement. Rather, plaintiff's conduct tends to indicate that it believed it had a good case. That belief was based upon its lawyers' advice." *Id.* at *2. Here, neither Bret nor his attorney have submitted any affidavits like in the case on which Bret relies.

[¶71.] Bret also relies on *Taylor v. Collins*, where the court held sanctions were not warranted against the plaintiff, where the attorney admitted "that at all times, [client] relied on [attorney's] advice as to the legal and factual sufficiencies of the action." 493 S.E.2d 475, 480 (N.C. Ct. App. 1997). The court held, "[i]n light of this evidence, we find that [client] in good faith relied on [attorneys] regarding the legal sufficiency of his claims and thus met his duty of making a 'reasonable inquiry.'" *Id.* The North Carolina Supreme Court explained, however, that while "good faith reliance on an attorney's advice" may preclude sanctions against the

party "under the legal sufficiency prong," the court has "made it clear . . . that this limitation applied only to the legal sufficiency prong and not the improper purpose prong of Rule 11. That distinction was based on the belief that a represented party should 'be held responsible if his evident purpose is to harass, persecute, otherwise vex his opponents, or cause them unnecessary cost or delay.'" *Brooks v. Giesey*, 432 S.E.2d 339, 342–43 (N.C. 1993) (citations omitted).

[¶72.]        Here, beyond a bare assertion that Bret relied on the advice of counsel, there is no evidence in the record to support his claimed reliance. While we do not question Bret's claim that he has expended over $300,000 in legal fees, in light of the numerous prior decisions in which courts have ruled that his claims are time-barred and precluded by res judicata, and the repeated sanctions accompanying such rulings, we view Bret's continued quest to disprove ownership of HRI and/or the Ranch to be nothing short of harassing. As we determined above, the apparent purpose behind Bret's relitigation of these issues is to harass, cause unnecessary delay, or needlessly increase the cost of litigation. As such, Bret's purported reliance on counsel is not a shield that he can hide behind to avoid the consequences of his own active participation in the numerous lawsuits in which he continues to make claims that have been rejected on several occasions. Under these circumstances, the circuit court did not abuse its discretion in holding Bret accountable for the harassing and improper sanctionable conduct under SDCL 15-6-11(c).

*c.* *Whether the $240,000 monetary sanction is excessive.*

[¶73.] Bret did not directly challenge or address the amount of the sanction in his opening appellate brief, but instead waited until his reply brief to do so. Accordingly, we doubt whether the issue is properly before us. *See Weiland v. Bumann*, 2025 S.D. 9, ¶ 50, 18 N.W.3d 148, 160 (where issue was not raised in an opening brief, we questioned whether the argument was properly before us); *Ellingson v. Ammann*, 2013 S.D. 32, ¶ 10, 830 N.W.2d 99, 102 ("A party may not raise an issue for the first time on appeal, especially in a reply brief when the other party does not have the opportunity to answer."). Nevertheless, the importance of the issue and amount of the sanction warrant exercising our discretion to address it.

[¶74.] In determining whether the sanction imposed by the circuit court was an abuse of discretion, we are guided both by statute and other principles. SDCL 15-6-11(c)(2) directs that "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *See also Smizer*, 2016 S.D. 3, ¶ 18, 873 N.W.2d at 703 ("We have said that the purpose of sanctions under SDCL 15-6-11 is to deter abuse by parties and counsel." (citation omitted)). Evidence of bad faith is not required. *Id.* Subject to some limitations, the sanction may consist of or include a nonmonetary sanction, such as filing restrictions, an order to pay a penalty into court, or under specific circumstances, an order directing payment of reasonable attorney fees and other expenses incurred as a direct result of the violation. SDCL 15-6-11(c)(2).

[¶75.] When imposing sanctions, SDCL 15-6-11(c)(3) requires that the court "describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed." This requirement "facilitate[s] effective appellate review." *Smizer*, 2016 S.D. 3, ¶ 18, 873 N.W.2d at 703 (citations omitted). While a court's "inherent powers must be exercised with restraint and discretion," a "primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Schlafly v. Eagle F.*, 970 F.3d 924, 936–37 (8th Cir. 2020) (citation omitted). The courts' sanctioning power should be used "sparingly." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004).

[¶76.] Bret first argues the amount of the monetary sanction is excessive because his conduct "was neither improper nor negligent." We disagree for all the above reasons we have found justifying sanctions.

[¶77.] Bret also relies on the fact that he was represented by counsel. While we have determined this fact does not insulate Bret from being sanctioned for his own purposeful harassing conduct, whether he was acting on the advice of legal counsel may be a relevant factor when considering the amount of sanction needed to deter further conduct of this nature. *Cf. Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 n.4 (1st Cir. 1992) (concluding that reliance on counsel "is a factor to be considered in determining what sanction may be appropriate").

[¶78.] The circuit court based its sanctions against Bret on the fact that he had previously been sanctioned over $120,000, which the court found "had no effect" on Bret. The court stated, "It is the intent of this [c]ourt to impress upon Mr. Healy

that his actions have consequences and should not continue, and it is the finding of this [c]ourt that the doubling of his past sanctions will do so."

[¶79.] The circuit court's finding that past sanctions have had no effect on Bret is entirely accurate, and the court was fully justified in its attempt to impress upon Bret that his actions have consequences. *See Willhite v. Collins*, 459 F.3d 866, 869 (8th Cir. 2006) (concluding the amount of the monetary sanction was "substantial, but not unwarranted"). In *Willhite*, the court concluded that although an award of sanctions should be "no greater than sufficient to deter future misconduct by the party," a large award was necessary to deter similar misconduct, noting that the sanctioned attorney had been sanctioned multiple times in the past. *Id.* (citation omitted). *See also In re Kunstler*, 914 F.2d 505, 525 (4th Cir. 1990) (holding the court could increase a sanction if there had been previous sanctions "because such conduct might indicate that the previous sanction was not enough to deter the repetition of the offense"). *Cf. Giangrasso v. Kittatinny Reg'l High Sch. Dep't of Educ.*, 865 F. Supp. 1133, 1141 (D.N.J. 1994) (holding "the enormity of this situation demands extraordinary sanctions," noting the plaintiff "abused the legal system to harass defendants" and that previous attempts at deterrence were unsuccessful). For many of the same reasons, a substantial monetary sanction may be warranted here. Despite prior sanctions and efforts to deter Bret's conduct, he has continued to abuse our legal system by asserting claims that have been raised or rejected in several prior proceedings.[12]

---

12. The dissent finds disproportionality in the sanction imposed on Bret "relative to the one imposed on his lawyer whose education, training, and professional

(continued . . .)

[¶80.] However, while deterrence is one of several factors that should be considered, a sanctioning court should also consider the party's ability to pay the sanction and which "sanction constitutes the least severe sanction that will adequately deter the undesirable conduct." *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992) (citation omitted); *Kunstler*, 914 F.2d at 523 (holding the court should consider the minimum amount to deter party's conduct and party's ability to pay); 61A Am. Jur. 2d Pleading § 533 (noting failure to consider equitable factors such as the ability to pay could amount to an abuse of discretion and that "although Rule 11 sanctions should be severe enough to deter future violations, they should not be financially ruinous").

[¶81.] Further, a monetary sanction is not the only option. The court in *Doering v. Union County Board of Chosen Freeholders*, held that courts are encouraged to "consider a wide range of alternative possible sanctions for violations of [Rule 11]." 857 F.2d 191, 194 (3d Cir. 1988). The sanction is "appropriate when it is the *minimum* that will serve to *adequately* deter the undesirable behavior." *Id.* "The language of Rule 11 evidences the critical role of judicial discretion" to craft a sanction to fit the situation. *Id.* Further, where the court "decides to award a

_____

(. . . continued)

role placed him in a far superior position to judge the viability and efficacy of Bret's legal positions." But, this ignores that Bret was the driving force behind these actions, both before and after Volesky's representation of him. Further, in addition to the monetary sanction against him, Volesky was reported to the State's disciplinary board, underwent the scrutiny of disciplinary proceedings, including a public hearing, and his license to practice law in this state was ultimately suspended for 90 days. Volesky's role as lawyer and adviser to Bret is reflected in the differing type of sanctions imposed on him, which also, by their nature, carried a significant financial penalty from lost income.

monetary sanction, . . . the total amount of such a sanction (as well as the initial decision whether to impose such a sanction) should be guided by equitable considerations." *Id.* at 195.

[¶82.]     We have not previously required that the courts consider the ability to pay when fashioning an appropriate sanction for violation of SDCL 15-6-11(b), nor have we expressly stated that the courts should consider non-monetary sanctions. Therefore, we find no fault in the circuit court's failure to do so here. However, it is the Court's opinion that the ability to pay a monetary sanction is an important consideration and that non-monetary sanctions should also be considered. Accordingly, we affirm the circuit court's conclusion that Bret violated SDCL 15-6-11(b), that sanctions can be imposed against him personally, and that sanctions are warranted. However, we remand to the circuit court for consideration of an appropriate sanction, be it monetary, non-monetary, or some combination of the two, and taking into account all the considerations discussed herein.

***Appellate Attorney Fees***

[¶83.]     HRI requests appellate attorney fees and costs in the amount of $9,330.88 pursuant to SDCL 15-17-51. Under SDCL 15-26A-87.3, appellate attorney fees may be awarded "only where such fees are permissible at the trial level." *Matter of Fred Petersen Land Tr.*, 2023 S.D. 44, ¶ 41, 995 N.W.2d 84, 93 (citation omitted). SDCL 15-17-51 provides that where a party's "requested relief is denied and if the court determines that it was frivolous or brought for malicious purposes, the court shall order the party whose claim, cause of action, or defense was dismissed or denied to pay part or all expenses incurred by the party defending

the matter, including reasonable attorneys' fees." Given our disposition on appeal, we conclude Bret's appeal was not frivolous or filed for malicious purposes. Therefore, we decline to award HRI its appellate attorney fees.

**Conclusion**

[¶84.] The issue that the circuit court found was falsely sworn to and that was the basis for the imposition of sanctions—the ownership of HRI—has been repeatedly addressed by both state and federal courts which have determined that Bret's claims are precluded. The circuit court did not clearly err in finding that when raising the same claims in an effort to dismiss the petition for supervised dissolution, Bret was motivated by an improper purpose, in violation of SDCL 15-6-11(b)(1). The circuit court did not abuse its discretion when determining that Rule 11 sanctions were warranted under the circumstances. We therefore affirm this determination. However, because we hold that a sanctioning court should also consider non-monetary sanctions and the ability to pay a monetary sanction, we vacate the circuit court's imposition of monetary sanctions and remand to the circuit court to reconsider an appropriate sanction against Bret.

[¶85.] Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

[¶86.] JENSEN, Chief Justice, and MYREN, Justice, concur.

[¶87.] SALTER and DEVANEY, Justices, dissent.

[¶88.] GUSINSKY, Justice, not having been a member of the Court at the time this action was considered by the Court, did not participate.

SALTER, Justice (dissenting).

[¶89.]     I believe the circuit court lacked authority under SDCL 15-6-11 (Rule 11) to impose a non-compensatory monetary sanction on a represented party under the circumstances here. I would vacate the Rule 11 sanction against Bret and respectfully offer this explanation.

[¶90.]     A Rule 11 sanction must be based upon a presentation to the court of a pleading, written motion, or other paper that does not meet one or more of the certification requirements in Rule 11(b). The basis of the circuit court's Rule 11 sanction against Bret here was his statement concerning the ownership of HRI, an issue that is somewhat obfuscated by the shifting sands of his litigation strategies in the ongoing dispute over the Healy Ranch. As the Court's opinion acknowledges, the difficulty Bret confronted in this case, and in others, is less about factual inaccuracy and more about a legal impediment—the inability to litigate his factual claims about HRI, HRP, and the ownership of Healy Ranch due to the claim preclusion aspects of res judicata.

[¶91.]     "[B]ecause Rule 11 carefully assigns responsibility between represented parties and their counsel, only attorneys may be held liable where the basis of a sanctions award is the frivolousness of a party's legal position." *Dearborn St. Bldg. Assocs., LLC v. Huntington Nat'l Bank*, 411 F. App'x 847, 852 (6th Cir. 2011) (unpublished) (citing Fed. R. Civ. P. 11(c)(5)(A)). Consequently, Volesky alone was responsible for making legal arguments, and he was, for this reason, appropriately subject to the sanction the circuit court imposed.

[¶92.] But a court's ability to impose a non-compensatory monetary sanction upon a represented party, like Bret, is different. Bret was not responsible for the legal arguments in this case; his lawyer, Volesky, was. The circuit court's finding that Bret violated Rule 11(b)(1) is a corollary of Volesky's advocacy. This is apparent from the court's explanation:

> Objectively and on its face this action is frivolous defined. No rational argument exists to support it, no basis to argue for change has any chance of success, and no reasonable person should expect a favorable ruling. It is clear and the finding of this [c]ourt that Mr. Healy is motivated to bring this action not by any belief in a supported legal claim, as those have all been turned away at the courthouse steps, but rather a clear and continuing effort to harass or cause unnecessary delay or needlessly increase the cost of litigation.

[¶93.] Bret's purpose was deemed improper precisely because it was founded upon a frivolous legal position that his lawyer should have counseled against, making the court's Rule 11(b)(1) finding for Bret and its frivolous finding for Volesky effectively one and the same. And although Bret may bear his share of responsibility for the outcomes over the course of the previous litigation, he cannot be sanctioned for a frivolous legal position taken *in this action* without contravening Rule 11(c)(2)(A).

[¶94.] But even if this were not the case, it is at least true that the sanction imposed on Bret is disproportionate relative to the one imposed on his lawyer whose education, training, and professional role placed him in a far superior position to judge the viability and efficacy of Bret's legal positions. This imbalance is particularly stark in light of the principle underlying Rule 11(c), which provides that "the ability to sanction a [represented party] is derivative, in part," to the

party's attorney violating Rule 11(b)'s certification requirement. 5A *Wright & Miller's Federal Practice & Procedure* § 1336.2, Westlaw (database updated Sept. 2025). But this rule becomes inverted in this case with a punitive Rule 11 sanction for a represented party that is *twenty-four times* more severe than the monetary sanction imposed on his lawyer.

[¶95.] The better course here is, in my view, to vacate the monetary sanction against Bret and remand the case to allow the circuit court to consider other types of sanctions, such as a compensatory award of attorney fees.

[¶96.] DEVANEY, Justice, joins this writing.